# IN THE SUPREME COURT OF IOWA

No. 12–0442

Filed June 21, 2013

**TAMMIE ACKELSON,**
        Appellant,

vs.

**MANLEY TOY DIRECT, L.L.C.** and **TOY NETWORK, L.L.C., et al.,**
        Appellees.
---------------------------------------------------------------
**ROBIN DRAKE** and **HEATHER MILLER,**
        Appellants,

vs.

**MANLEY TOY DIRECT, L.L.C.** and **TOY NETWORK, L.L.C., et al.,**
        Appellees.

---

        Appeal from the Iowa District Court for Warren County, Gregory A. Hulse, Judge.

        Plaintiffs appeal a ruling of the district court granting defendants' motion to strike plaintiffs' claim for punitive damages. **AFFIRMED AND REMANDED.**

        Jill M. Zwagerman and Bryan P. O'Neill of Newkirk Law Firm, P.L.C., Des Moines, for appellants.

        Frank B. Harty, Mary E. Funk, Debra L. Hulett of Nyemaster Goode, P.C., Des Moines, and Frances M. Haas of Nyemaster Goode, P.C., Cedar Rapids, for appellees.

Thomas J. Duff of Duff Law Firm, P.L.C., Des Moines, Kodi A. Brotherson and Katie A. Ervin Carlson of Babich Goldman, P.C., Des Moines, and Emily E. McCarty of Fiedler & Timmer, P.L.L.C., Urbandale, for amicus curiae Iowa Association of Justice.

James P. Craig, Brenda K. Wallrichs, and Megan R. Dimitt of Lederer Weston Craig, P.L.C., Cedar Rapids, for amicus curiae Iowa Defense Counsel Association.

Russell L. Samson and Sara R. Laughlin of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for amicus curiae Iowa Association of Business and Industry.

**CADY, Chief Justice.**

In this appeal, we must decide whether the Iowa Civil Rights Act (ICRA) permits a district court to award punitive damages. The district court held an award of punitive damages is not permitted under the ICRA. On our review, we affirm the decision of the district court and remand for further proceedings.

## I. Background Facts and Proceedings.

Tammie Ackelson, Robin Drake, and Heather Miller were employees of Manley Toy Direct and Toy Network, both limited liability companies located in Indianola, Iowa, with parent companies in Hong Kong. The businesses purchase and sell toys and other merchandise.

In 2010, the three employees initiated lawsuits against the businesses, collectively referred to as Manley Toy, and certain individuals associated with the businesses. The petitions alleged employment practice claims based on a violation of the ICRA. The claims alleged a supervisor named Tim Downey and a coworker named Steffen Hampton repeatedly made vulgar and harassing comments to the women, including demeaning name-calling, and sexually explicit and offensive discussions about Downey's sexual relationships. The lawsuits articulated claims for sexual harassment, sex discrimination, and retaliation under the ICRA and demanded punitive damages. No other claims were alleged.

Manley Toy moved to strike the claim for punitive damages. The district court granted Manley Toy's motion. It reasoned that the court could only grant relief that the civil rights commission was authorized to grant, and punitive damages are not available under the ICRA.

The plaintiffs sought, and we granted, interlocutory appeal. They ask us to review our prior decisions holding that punitive damages are not available for claims under the ICRA and to interpret the ICRA to permit courts to award punitive damages.

## II. Standard of Review.

We review a decision by the district court on a motion to strike for correction of legal errors. *See* Iowa R. App. P. 6.907. Similarly, we review an interpretation of a statute for correction of legal errors. *Rolfe State Bank v. Gunderson*, 794 N.W.2d 561, 564 (Iowa 2011).

## III. Discussion.

**A. ICRA Framework.** The ICRA prohibits unfair and discriminatory employment practices against a person "because of" the person's membership in a protected class and provides for a claim for relief. Iowa Code §§ 216.6(1)(*a*), .15 (Supp. 2009). Persons who seek to assert their rights under the ICRA, however, must follow the statutory processes to obtain relief. *See id.* §§ 216.15–.16. This procedure begins by filing a complaint with the state civil rights commission, but eventually permits an action to be pursued in court.[1]

---

[1]The complaint process begins when a person claiming to be injured by a discriminatory practice files an administrative complaint with the state civil rights commission. *See* Iowa Code § 216.15(1). When a complaint is received, the complaint is investigated and then referred to an administrative law judge who determines whether probable cause exists for the complaint. *Id.* § 216.15(3)(*a*). If the administrative law judge finds no probable cause exists, the complaint is dismissed and cannot continue. *Id.* §§ 216.15(3)(*c*), 216.16(3)(*a*)(1). If probable cause exists, the commission may pursue administrative remedies. *Id.* § 216.15(3)(*c*).

The complainant may leave the administrative track and choose to file a suit in district court. Filing an administrative complaint is a mandatory prerequisite to filing a complaint in district court. *See id.* § 216.16(1) (providing that a complainant "must initially seek an administrative relief"). After a complaint has been on file with the ICRA for sixty days, unless an administrative judge has made a finding that no probable cause exists, the complainant may obtain a release to file an action in the district court—a so-called "right to sue letter." *Id.* § 216.16(3)(*a*). The issuance of a right-to-sue letter bars the commission from pursuing administrative remedies further. *Id.*

Section 216.16(6) of the ICRA provides that "[t]he district court may grant any relief in an action under this section which is authorized by section 216.15, subsection 9, to be issued by the commission." *Id.* § 216.16(6). In turn, section 216.15(9) provides:

> If . . . the commission determines that the respondent has engaged in a discriminatory or unfair practice, the commission . . . shall issue an order requiring the respondent to cease and desist from the discriminatory or unfair practice and to take the necessary remedial action as in the judgment of the commission will carry out the purposes of this chapter.

*Id.* § 216.15(9). Additionally, in allowing the ICRA to award damages to the complainant, section 216.15(9)(*a*)(8) states:

> For the purposes of this subsection and pursuant to the provisions of this chapter "remedial action" includes but is not limited to the following:
>
>     . . . .
>
>     . . . Payment to the complainant of damages for an injury caused by the discriminatory or unfair practice which damages shall include but are not limited to actual damages, court costs and reasonable attorney fees.

*Id.* § 216.15(9)(*a*)(8).

The ICRA was enacted in 1965. 1965 Iowa Acts ch. 121 (codified at 105A.1–.12 (1966)). It was subsequently amended in 1978 to require the exhaustion of administrative remedies before proceeding into court through the statutory procedures that remain in the Act today. *See* 1978 Iowa Acts ch. 1179 (codified at § 601A.1–.19 (1979)). However, the statutory language at issue in this case has not been changed in any meaningful way since the 1978 amendments.[2]

_____

§ 216.16(4). Once the action is in district court, it proceeds as an ordinary action at law.

[2]ICRA has been amended over the years, but the statutory language at issue in this case has gone unchanged. *See* 1995 Iowa Acts ch. 129 (adding provisions related to housing discrimination); 1998 Iowa Acts ch. 1202, §§ 36–37 (amending ICRA to

**B. Existing Case Authority.** We have previously held the legislative scheme of the ICRA does not permit an award of punitive damages. *See Chauffeurs, Teamsters & Helpers, Local Union No. 238 v. Iowa Civil Rights Comm'n,* 394 N.W.2d 375, 384 (Iowa 1986). In *Chauffeurs,* a union sought judicial review of a commission decision awarding emotional distress and punitive damages to an individual excluded from the union on the basis of race. *Id.* at 377. The union argued the damages section under the ICRA did not give the commission statutory authority to award punitive damages. *Id.* at 384. In response, the commission argued the plain meaning of the statutory phrase " 'damages shall include but are not limited to actual damages' " implied the availability of punitive damages. *Id.* (quoting Iowa Code § 601A.15(8)(*a*)(8) (1979) (current version at *id.* § 216.15(9)(*a*)(8) (Supp. 2009))).

We held the statutory phrase pertaining to damages "[did] not necessarily imply punitive damages are available." *Id.* We relied primarily on the reasoning of *High v. Sperry Corp.,* 581 F. Supp. 1246, 1247–48 (S.D. Iowa 1984). *See Chauffeurs,* 394 N.W.2d at 384. The court in *High* found the district court's authority to award damages is no more extensive than that of the commission. 581 F. Supp. at 1247. It reasoned that although "actual damages" is often synonymous with

---

conform with changes to the Iowa Administrative Procedure Act); 2005 Iowa Acts ch. 23 (modifying the certified mail requirement in chapter 216); 2007 Iowa Acts ch. 110, § 1 (amending section 216.15 to comply with section 614.8); 2008 Iowa Acts ch. 1028 (extending the time period during which a complaint may be filed with the commission); 2009 Iowa Acts ch. 96 (making wage discrimination an unfair practice under ICRA and providing treble damages for willful violations of workers' rights); 2009 Iowa Acts ch. 178, §§ 25–27 (reducing paperwork in ICRA proceedings); *see also* 1991 Iowa Acts ch. 184 (empowering the commission to award relief for discrimination in housing, creating a private cause of action in district court for housing discrimination, and permitting an award of actual and punitive damages for instances of housing discrimination).

"compensatory damages"—which seemingly includes everything other than punitive damages—"actual damages" also sometimes merely means "pecuniary losses and [does] not include other types of non-punitive damages, such as special damages." *Id.* "Thus, the phrase 'not limited to actual damages' in the Iowa statute [did] not necessarily imply the availability of punitive damages." *Id.* The court predicted:

> [I]f and when the issue is presented to the Iowa Supreme Court, it will interpret the term "actual damages" in the Iowa statute to be a reference only to pecuniary losses and will construe the phrase in which that term is found—"which damages shall include but are not limited to actual damages"—to fall short of enabling the commission to award punitive damages. I think it most unlikely that the Iowa Supreme Court would ever find power in an administrative agency to award punitive damages to a claimant unless there were an express legislative grant of such power.

*Id.* at 1248.

We confirmed this prediction, stating, "The language 'but not limited to actual damages' in [ICRA] does not necessarily imply punitive damages are available." *Chauffeurs*, 394 N.W.2d at 384. We also relied on "[t]he general rule . . . that an administrative agency cannot award punitive damages absent express statutory language allowing such an award." *Id.*

Four years later, in *Smith v. ADM Feed Corp.*, we reiterated our interpretation of the ICRA that punitive damages were not available unless expressly provided. 456 N.W.2d 378, 383 (Iowa 1990), *overruled on other grounds by McElroy v. State*, 703 N.W.2d 385, 394–95 (Iowa 2005). We stated:

> Unlike [the Federal Fair Housing Act], [the ICRA] does not permit an administrative agency, or the district court . . . , to award punitive damages. In *Chauffeurs*, we noted the general rule that an agency cannot award punitive damages absent express statutory language and concluded that the language "but not limited to actual damages" in section

601A.15(8)(*a*)(8) [current version at Iowa Code § 216.15(9)(*a*)(8) (Supp. 2009)] does not necessarily imply that punitive damages are available.

*Smith*, 456 N.W.2d at 383 (citation omitted). We also observed "[t]he district court sits as the commission and is empowered to grant only that relief authorized by section [216.15]." *Id.* at 381 (citing Iowa Code § 601A.16(5) (current version at *id.* § 216.16(6))).

Following *Chauffeurs* and *Smith*, we have continued to mention in a series of cases that punitive damages are not an available remedy unless expressly provided for under the ICRA. *See, e.g., Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 849 (Iowa 2001). The last case to make this pronouncement was in 2004. *See Van Meter Indus. v. Mason City Human Rights Comm'n*, 675 N.W.2d 503, 515 (Iowa 2004) (citing *Chauffeurs* and holding that if the state civil rights commission lacks the power to award punitive damages so does a local civil rights commission). One case, *City of Hampton v. Iowa Civil Rights Commission,* cited *Chauffeurs* when it held the plaintiff introduced insufficient evidence to support an emotional-distress award. 554 N.W.2d 532, 537 (Iowa 1996). It reasoned that an emotional-distress award that was clearly excessive given the scant evidence the plaintiff introduced would be essentially punitive, and since *Chauffeurs* held punitive damages are unavailable under ICRA the emotional-distress award had to be reduced commensurate with the evidence introduced at trial. *Id.* Thus, our prior cases have made it abundantly clear that the ICRA does not permit courts to award punitive damages unless it expressly says so.

**C. Development of the Law Outside of Iowa.** While we have consistently declared since 1986 that punitive damages are not available under our civil rights statute, a survey of the landscape of the law outside Iowa reveals a split of authority, with considerable legislative and

judicial activity.[3]  We review this law to give us a better understanding of the issue we must decide.

To begin with, we recognize Congress amended Title VII of the Federal Civil Rights Act in 1991 to provide for a broader array of damages, including punitive damages.  *See* Civil Rights Act of 1991, Pub. L. No. 102-166, § 102, 105 Stat. 1071, 1072 (codified at 42 U.S.C. § 1981a(a)(1) (1994)).  It enacted the amendment "to strengthen existing protections and remedies available under federal civil rights laws to provide more effective deterrence and adequate compensation for victims of discrimination."  H.R. Rep. No. 102-40 (II), at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 694.

Additionally, many state statutes now expressly permit either the district court or an administrative agency to award punitive damages.[4]

---

[3]Some states have statutes dealing with employment discrimination that do not create a private cause of action in district court.  *See, e.g.*, Ga. Code Ann. §§ 45-19-38 to -39, (West 2003) (providing for resolution of complaints by a special master with an opportunity to appeal to a district court); N.C. Gen. Stat. § 143-422.2 (2001) (recognizing a public policy against discrimination but not providing for an independent cause of action); S.C. Code Ann. §§ 1-13-90, -100 (2005) (permitting an individual to file a complaint with the state human affairs commission, but noting in section 1-13-100 that "[n]othing in this chapter may be construed to create a cause of action other than those specifically described in Section 1-13-90"); Utah Code Ann. § 34A-5-107 (LexisNexis 2011) (providing for administrative proceedings but not a district court action).  Similarly, some states, such as Alabama and Mississippi, do not appear to have statutes on point; plaintiffs in those states must rely on Title VII.

[4]*See, e.g.*, Ark. Code Ann. § 16-123-107(c)(2)(A) (2006); Del. Code Ann. tit. 19, § 715(1)(c) (2005); Fla. Stat. Ann. § 760.11(5) (West 2010); Haw. Rev. Stat. § 368-17(a) (1993); Idaho Code Ann. § 67-5908(3)(e) (2006); Me. Rev. Stat. Ann. tit. 5, § 4613(2)(B)(8) (2013); Md. Code Ann., State Gov't § 20-1013(e)(1) (LexisNexis 2009); Mass. Gen. Laws Ann. ch. 151B, § 9 (West 2004); Minn. Stat. Ann. § 363A.29, subd. 4(a) (West 2012); Mo. Ann. Stat. § 213.111(2) (West 2004); Or. Rev. Stat. Ann. § 659A.885(3)(a) (West 2013); R.I. Gen. Laws Ann. § 42-112-2 (West 2006); Tex. Lab. Code Ann. § 21.2585(a)(2) (West 2006); Vt. Stat. Ann. tit. 21, § 495b(b) (2009); P.R. Laws Ann. tit. 1, § 14 (2008).  New Jersey presents a special case.  Section 10:5-13 provides: "All remedies available in common law tort actions shall be available to prevailing plaintiffs.  These remedies are in addition to any provided by this act or any other statute."  N.J. Stat. Ann. § 10:5-13 para. 2 (West 2002). Section 10:5-3 is a declaration of purpose and legislative findings, but explicitly contemplates that punitive

On the other hand, some jurisdictions explicitly prohibit awards of punitive damages in all or some circumstances.[5]

---

damages are available to ordinary common law tort plaintiffs and accordingly should be available to plaintiffs pursuing claims under the New Jersey act. *Id.* § 10:5-3 para. 3.

Similarly, New Hampshire explicitly permits the district court to award "enhanced compensatory damages." N.H. Rev. Stat. § 354-A:21-a(I) (LexisNexis 2008). Enhanced compensatory damages are awarded under similar circumstances as punitive damages but reflect a different underlying rationale. *See State v. Hynes*, 978 A.2d 264, 273 (N.H. 2009); *see also Vratsenes v. N.H. Auto, Inc.*, 289 A.2d 66, 68 (N.H. 1972) (rejecting deterrence rationale for punitive damages and instead allowing the size of the compensatory damage award to reflect the aggravating circumstances). As *Hynes* acknowledged, these enhanced damages are not meant to be punitive but to compensate the victim. 978 A.2d at 273. Notwithstanding, given New Hampshire's long-standing rule regarding punitive damages, the New Hampshire General Court's addition of enhanced compensatory damages in 2006 appears to reflect the same approach as the above states.

Some of these jurisdictions cap the amount of punitive damages the jury may award a successful plaintiff. *See, e.g.*, Ark. Code Ann. § 16-123-107(c)(2)(A) (providing a cap for the total of compensatory and punitive damages a plaintiff may be awarded based on the total number of employees the defendant employs).

[5]*See, e.g.*, Mont. Code Ann. § 49-2-506(2) (2011) (prohibiting punitive damages except in cases of housing discrimination); N.Y. Exec. Law § 297(9) (McKinney 2005) (permitting a court to award punitive damages "in cases of housing discrimination only"); Va. Code Ann. § 2.2-3903(C) para. 2 (2011 & Supp. 2012). Similarly, an employee discharged in contravention of Nebraska's Fair Employment Practice Act may not be awarded punitive damages in accordance with the Nebraska Constitution. *Pedersen v. Casey's Gen. Stores, Inc.*, 978 F. Supp. 926, 935 (D. Neb. 1997) ("[P]unitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction." (citation and internal quotation marks omitted)).

Michigan long ago adopted a rule regarding punitive damages, which is conceptually similar to New Hampshire's rule, stated above, but similar to Nebraska's rule in effect in this context. *See Eide v. Kelsey-Hayes Co.*, 427 N.W.2d 488, 498–501 (Mich. 1988) (Griffin, J., concurring in part and dissenting in part). In Michigan, "exemplary damages may not be awarded to punish. They are available, if at all, only as an element of compensatory damages." *Id.* at 498; *see also Veselenak v. Smith*, 327 N.W.2d 261, 265 (Mich. 1982) (rejecting a distinction between mental-anguish damages and separate exemplary damages). Explaining this rule, the Michigan Supreme Court has said: "When compensatory damages can make the injured party whole, this court has denied exemplary damages." *Hayes-Albion v. Kuberski*, 364 N.W.2d 609, 617 (Mich. 1984). Thus, the remedies section of Michigan's civil rights act—which defines "damages" as "damages for injury or loss caused by each violation of this act" and does not otherwise explicitly provide for exemplary damages, Mich. Comp. Laws Ann. § 37.2801(3) (West 2001)—does not include exemplary damages. *See Eide*, 427 N.W.2d at 500–01; *id.* at 493 (majority opinion) (adopting the reasoning of the partial dissent regarding exemplary damages).

Some states have enacted statutes that authorize a variety of relief for successful employment discrimination plaintiffs, but neither specifically mentions punitive damages nor contains open-ended language such as "included, but not limited to." *See, e.g.*, Colo. Rev. Stat. § 24-34-405 (2012);[6] 775 Ill. Comp. Stat. Ann. 5/8A-104 (West 2011); N.M. Stat. Ann. § 28-1-13(D) (2012); Ky. Rev. Stat. Ann. § 344.450 (LexisNexis 2011); Okla. Stat. Ann. tit. 25, § 1350(G) (West 2008 & Supp. 2013); S.D. Codified Laws § 20-13-35.1 (2004); Wis. Stat. § 111.39(4)(c) (2011 & Supp. 2012); Wyo. Stat. Ann. § 27-9-106(n) (2011). A number of statutes include more open-ended, or seemingly open-ended, language identifying the relief the district court may award. *See, e.g.*, Alaska Stat. §§ 18.80.220, 22.10.020(i) (2012); Ariz. Rev. Stat. Ann. § 41-1481(G) (2011); Conn. Gen. Stat. Ann. § 46a-104 (West 2009); D.C. Code § 2-1403.16(b) (LexisNexis 2012); Ind. Code Ann. §§ 22-9-1-6(j), -17(b) (LexisNexis 2010), Kan. Stat. Ann. § 44-1005(k) (2000); La. Rev. Stat. Ann. §§ 51:2261(C), 2264 (2012); Nev. Rev. Stat. § 233.170(4)(b) (2011); N.D. Cent. Code § 14-02.4-20 (2009); Ohio Rev. Code Ann. § 4112.05(G)(1) (LexisNexis 2007); 43 Pa. Cons. Stat. Ann. § 962(c)(3) (West 2009); Tenn. Code Ann. §§ 4-21-306(a)(7), -311(b) (2011); Wash. Rev. Code Ann. § 49.60.030(2) (West 2008); W. Va. Code Ann. § 5-11-13(c) (LexisNexis 2011).[7]

---

[6]The Colorado General Assembly amended section 24-34-405 in its most recent legislative session. *See* 2013 Colo. Legis. Serv. ch. 168, § 1. The amended statute will permit complainants bringing claims on or after January 1, 2015, to seek punitive damages. *See* 2013 Colo. Legis. Serv. ch. 168, § 1, 5 (permitting recovery of punitive damages in Colo. Rev. Stat. § 24-34-405(3)(a)). This Act will take effect August 7, 2013, unless "a referendum petition is filed pursuant to section 1(3) of article V of the [Colorado] constitution."

[7]California's Fair Employment and Housing Act is effectively similar to these statutes. *See* Cal. Gov't Code § 12965(b) (West 2005 & Supp. 2013). It provides a right of action for persons claiming to be aggrieved by a discriminatory employment practice but does not mention relief other than attorney's fees. *See id.* The California Supreme

Of these latter jurisdictions, some courts have concluded that, due in part to the absence of express statutory provision for punitive damages in their statutes, a district court may not award punitive damages.[8] *See Cronin v. Sheldon*, 991 P.2d 231, 236–37 (Ariz. 1999); *Ind. Civil Rights Comm'n v. Alder,* 714 N.E.2d 632, 638 (Ind. 1999); *Devillier v. Fid. & Deposit Co. of Md.*, 709 So. 2d 277, 282 (La. Ct. App. 1998); *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989); *Hoy v. Angelone*, 720 A.2d 745, 749–51 (Pa. 1998); *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35–36 (Tenn. 1997); *Dailey v. N. Coast Life Ins. Co.*, 919 P.2d 589, 592 (Wash. 1996). Other jurisdictions have interpreted their acts to permit a district court to award punitive damages. *See Loomis Elec. Prot., Inc. v. Schaefer*, 549 P.2d 1341, 1343 (Alaska 1976); *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 372 (D.C. 1993); *Ellis v. N.D. State Univ.*, 764 N.W.2d 192, 203 (N.D. 2009); *Rice v. CertainTeed Corp.*, 704 N.E.2d 1217, 1220–21 (Ohio 1999); *Haynes v. Rhone-Poulenc, Inc.*, 521 S.E.2d 331, 346–48 (W. Va. 1999). In Connecticut, an apparent split of authority exists among the superior courts regarding the power of the court to award punitive damages. *Compare Collier v. State,*

---

Court interpreted this statute to permit a court to award punitive damages in appropriate cases because a long-standing California rule allows civil litigants all forms of relief, including punitive damages, unless the statute evinces a contrary intent. *See Commodore Home Sys., Inc. v. Super. Ct. of San Bernadino*, 649 P.2d 912, 914–18 (Cal. 1982).

[8]Kansas does not appear to have rendered a decision regarding whether punitive damages are available under its current statute. However, a decision under a prior version of the statute, which had substantively different language from the ICRA, held punitive damages were not available. *See Woods v. Midwest Conveyor Co.*, 648 P.2d 234, 244–45 (Kan. 1982), *superseded by statute on other grounds as stated in Kan. Human Rights Comm'n v. Dale*, 968 P.2d 692, 696 (Kan. 1998). The *Woods* court viewed the Kansas Act as primarily equitable, not legal, and held that punitive damages, a legal remedy, are not specifically authorized by statute. *See Woods*, 648 P.2d at 244–45. When the statute was amended to enlarge the scope of available relief and include compensatory damages, punitive damages were not similarly included. *See* Kan. Stat. Ann. § 44-1005(k).

No. CV96-80659, 1999 WL 300643, at *3–4 (Conn. Super. Ct. May 3, 1999) (permitting a district court to award punitive damages), *with Wright v. Colonial Motors, Inc.*, No. CV116008335, 2012 WL 2044635, at *1–2 (Conn. Super. Ct. May 16, 2012) (holding a court may not award punitive damages).

Some of the courts that have rejected punitive damages claims have strong, well-established public policies against permitting punitive damages without express legislative authorization. *See Devillier*, 709 So. 2d at 282 ("Punitive damages cannot be awarded unless authorized by statute."); *Dailey*, 919 P.2d at 590 ("Governing resolution of this case is the court's long-standing rule prohibiting punitive damages without express legislative authorization."); *see also McCoy v. Ark. Natural Gas Co.*, 143 So. 383, 385–86 (La. 1932) ("There is no authority in the law of Louisiana for allowing punitive damages in any case, unless it be for some particular wrong for which a statute expressly authorizes the imposition of some such penalty."). These jurisdictions are comparable to Nebraska, which has held that "punitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed." *Distinctive Printing & Packaging Co. v. Cox*, 443 N.W.2d 566, 574 (Neb. 1989); *see also Pedersen*, 978 F. Supp. at 935. On the other hand, other jurisdictions mention public policy considerations to help recognize punitive damages. The Supreme Court of Alaska concluded "the legislature intended to put as many 'teeth' into [the] law as possible." *Loomis*, 549 P.2d at 1343.

This review not only reveals divergent approaches to punitive damages in civil rights litigation, but shows that the issue, for the most part, has received much attention. In particular, it has also been an issue that has actively engaged legislatures and required courts to

interpret statutory enactments. Over the years, this time-honored process has allowed the states to carve out their position on punitive damages.

**D. Public Policy Considerations.** As the review of the law in other jurisdictions reveals, public policy considerations can play a critical role in the decision to permit or deny punitive damages. The role of public policy in permitting an award of punitive damages under the ICRA is highlighted by the amicus briefs filed in this case, including the brief filed by the Association of Business and Industry (ABI).

First, it asserts Iowa businesses prefer a climate in which punitive damages are not available. It is argued that punitive damage awards can give rise to adverse consequences to businesses, including the threat of insolvency. *See* W. Kip Viscusi, *The Social Costs of Punitive Damages in Environmental and Safety Torts*, 87 Geo. L.J. 285, 285 (1998). ABI also points out that "Iowa is geographically surrounded by states that have business-friendly legal climates with respect to this issue. . . . Iowa competes with these states to attract new businesses, as well as for the jobs and commerce they generate." Second, ABI argues that the costs of punitive damages awards will be passed on to consumers and shareholders. *See* Lisa Litwiller, *From* Exxon *to* Engle*: The Futility of Assessing Punitive Damages as Against Corporate Entities*, 57 Rutgers L. Rev. 301, 334–35 (2004).

Of course, arguments can be made based on public policy that would support punitive damages. As the plaintiff's argue, punitive damages are well-established under Iowa's common law. *See Lacey v. Straughan*, 11 Iowa 258, 260 (1860). Punitive damages by definition punish defendants who have intentionally violated another's rights. *See Ward v. Ward*, 41 Iowa 686, 688 (1875). They exist to protect society and

the public in general. *Sebastian v. Wood*, 246 Iowa 94, 100, 66 N.W.2d 841, 844 (1954); *see also* David G. Owen, *A Punitive Damages Overview: Functions, Problems and Reform*, 39 Vill. L. Rev. 363, 374–81 (1994).

In particular, punitive damages would serve to deter purposeful employment discrimination. *Cf. Humburd v. Crawford*, 128 Iowa 743, 744, 105 N.W. 330, 330–31 (1905) (reasoning that the strong public policy opposing discrimination in public accommodations, evidenced by the Iowa Civil Rights Act of 1884, could be effectuated through a private cause of action for damages). Indeed, punitive damages have been permitted in a variety of employment-related common law cases to vindicate workers' rights. *See, e.g., Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 743 N.W.2d 525, 528–29 (Iowa 2007) (discussing whether defendant's conduct in a case involving wrongful discharge in violation of public policy met the standard for punitive damages set forth in section 668A.1); *Tullis v. Merrill*, 584 N.W.2d 236, 238, 241 (Iowa 1998) (affirming punitive damage award against an employer who retaliated against an employee in violation of the public policy expressed in Iowa's Wage Payment Collection Law). Additionally, punitive damage awards—like awards of attorney's fees—can play a crucial role in public interest cases. *See Ayala v. Ctr. Line, Inc.*, 415 N.W.2d 603, 605 (Iowa 1987) ("The reason for awarding attorneys fees in [a civil rights case] is to ensure that private citizens can afford to pursue the legal actions necessary to advance the public interest vindicated by the policies of civil rights acts.").

**E. Current Status of Iowa Law.** The plaintiffs suggest we landed a knockout blow to the rule against the recovery of punitive damages under the ICRA in *McElroy*, and a careful application of the rules of statutory construction reveal the ICRA is properly interpreted to permit

punitive damages. In *McElroy*, we overruled our prior pronouncement in *Smith* that litigants seeking money damages under the ICRA were not entitled to a jury trial. 703 N.W.2d at 394–95. Instead, we held such claims were subject to the rights of civil litigants to a jury trial. *Id.* We characterized the core premise of *Smith*, that "the district court in an ICRA action 'sits as the [commission] and is empowered only to grant that relief authorized' by the ICRA," as "fundamentally flawed." *See id.* at 393 (quoting *Smith*, 456 N.W.2d at 381). We also quoted from the *Smith* dissent, observing the legislature sought to provide " 'an *alternative* to the administrative proceeding in the form of an ordinary civil action.' " *McElroy*, 703 N.W.2d at 394 (quoting *Smith*, 456 N.W.2d at 387–88 (Carter, J., dissenting)).

We then said:

> While it is true the ICRA generally requires plaintiffs to exhaust their administrative remedies, there is nothing extraordinary about the nature of a district court proceeding brought once those remedies are so exhausted. The ICRA is no different than any other statute providing a cause of action. The ICRA has always permitted a plaintiff to sue for monetary damages in the district court. For this reason, it is not surprising the legislature did not expressly indicate claimants were entitled to a jury trial under the ICRA—it was assumed.

*Id.*

The plaintiffs rely on our own criticism of *Smith* as a signal that *McElroy* not only opened the door for jury trials in ICRA claims, but also to allowing in other components of the civil justice system, including punitive damages. They then developed a detailed analysis of the relevant statutory language of the ICRA to support an interpretation that the legislature implicitly intended for punitive damages to be awarded. This analysis was met with a strong countervailing argument by Manley Toy.

**F. Statutory Interpretation.** We approach the resolution of the issue in this case the same as we approach the resolution of all issues of statutory interpretation. Our task is to ascertain the intent of our legislature. *Andover Volunteer Fire Dep't v. Grinnell Mut. Reins. Co.*, 787 N.W.2d 75, 81 (Iowa 2010). This task is not only tied to the separation-of-powers doctrine, but it is rooted in "the underlying principles that the legislature makes the law and the courts interpret the law." *Id.*

Importantly, the rules of interpretation established to assist courts in determining legislative intent do not follow a common path, only a common outcome. At times, various rules are used to the exclusion of others. In this case, we decline to revisit an interpretation based on the words and phrases used in the relevant statute.

Instead, the path we follow in this case is one primarily built on the venerable principles of stare decisis and legislative acquiescence. We are slow to depart from stare decisis and only do so under the most cogent circumstances. *See State v. Liddell*, 672 N.W.2d 805, 813 (Iowa 2003). Moreover, we presume the legislature is aware of our cases that interpret its statutes. *Baumler v. Hemesath*, 534 N.W.2d 650, 655 (Iowa 1995). When many years pass following such a case without a legislative response, we assume the legislature has acquiesced in our interpretation. *Gen. Mortg. Corp. of Iowa v. Campbell*, 258 Iowa 143, 152, 138 N.W.2d 416, 421 (1965).

We have clearly and repeatedly stated our conclusion that the ICRA does not implicitly permit an award of punitive damages. This message has been a reoccurring pronouncement over the last twenty-seven years. No significant legislative changes have been made since our first pronouncement in 1986 that would even hint at a shift in legislative intent since that time.

During this same period, the issue of punitive damages in civil rights claims has received broad national attention, making it very likely that our legislature would have taken action to alter our interpretation if it disapproved. Our review of the landscape of the law across the nation shows that this has been a topic of national conversation. Additionally, the issue is injected with public policy considerations, making it an issue particularly appropriate for legislative consideration. *See Jensen v. Sattler*, 696 N.W.2d 582, 586 (Iowa 2005) ("The scope of the statute is a matter of public policy and therefore within the province of the legislature."); *cf. Robinson v. Bognanno*, 213 N.W.2d 530, 532 (Iowa 1973) ("[A]n amendment [to enlarge the class protected by the Dram Shop Act] would be the exclusive province of the legislature."), *overruled on other grounds by Lewis v. State*, 256 N.W.2d 181, 192 (Iowa 1977). Overall, we think our legislature would be quite surprised to learn if we decided to reverse course and take a different position under the guise of statutory interpretation. We did our job twenty-seven years ago and will leave it for the legislature to take any different approach. The specific arguments presented by the plaintiffs are not so powerful or obvious that they plainly undermine our prior line of cases. Additionally, we recognize our legislature has demonstrated that it knows how to permit punitive damages for specific civil rights actions when it wishes to do so. *Compare* Iowa Code § 216.15(9)(*a*)(8) (permitting the commission to award complainant "damages for an injury caused by the discriminatory or unfair practice which damages shall include but are not limited to actual damages" in an employment discrimination action), *with id.* § 216.17A(6)(*a*) (permitting the district court to award "actual and punitive damages" in a housing discrimination action). It expressly provided for punitive damages for housing discrimination when it added section

216.17A(6)(*a*) in 1991, only five years after *Chauffeurs* and just a year after *Smith*. *See* 1991 Iowa Acts ch. 184, § 11 (allowing award of "[a]ctual and punitive damages") (codified at Iowa Code § 601A.17A (1993) (current version at *id.* § 216.17A(6)(*a*))).

We acknowledge that we reversed course in *McElroy* when we overruled *Smith* and interpreted the ICRA to allow for jury trials in court proceedings. Yet, *Smith* was a very narrow majority decision and preceded *McElroy* by just fifteen years. Additionally, the question of punitive damages has been a very visible issue for a long time across the nation, and Iowa's position has been staked out. It is a position that is ingrained in our legal culture. Thus, the backdrop to *McElroy* was much different than it is to this case, and we are confident that our legislature has acquiesced in our position after twenty-seven years. Under all the circumstances, we conclude our legislature did not intend to allow for punitive damages under the ICRA except when it expressly did so.

**IV. Conclusion.**

We affirm the decision of the district court and remand for further proceedings.

**AFFIRMED AND REMANDED.**