# IN THE SUPREME COURT OF IOWA

No. 13–1228

Filed November 21, 2014

**STATE OF IOWA,**

Appellee,

vs.

**DAVID JOSEPH HELLSTERN,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, Joe E. Smith, Judge.

Defendant appeals from his conviction for operating while intoxicated (first offense), claiming violation of his right to consult privately with legal counsel before submitting to chemical testing. **REVERSED AND REMANDED.**

Robert G. Rehkemper of Gourley, Rehkemper & Lindholm, P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, John P. Sarcone, County Attorney, and Maurice W.B. Curry and Jordan A. Roling, Assistant County Attorneys, for appellee.

**WATERMAN, Justice.**

In this appeal, we revisit the obligation of an arresting officer under Iowa Code section 804.20 (2013) to facilitate communications between an attorney and a person arrested for operating a motor vehicle while intoxicated (OWI) in violation of section 321J.2. The defendant was seeking legal advice regarding whether to submit to a chemical breath test. The officer denied his request for privacy during his teleconference with a lawyer on the jail phone and stopped short of disclosing that private, in-person attorney–client consultations were permitted there. Defendant then took the Breathalyzer test, which showed his blood alcohol level was .194%, above the legal limit for intoxication (.08%). Defendant argues the officer was required under section 804.20 to inform him of his right to a confidential, in-person attorney–client conference at the jail. Alternatively, he argues he was entitled to a private teleconference with counsel under article I, section 10 of the Iowa Constitution. The district court denied his motion to suppress the breath test and convicted him of OWI (first offense). We retained defendant's appeal.

As explained below, based on our precedent interpreting sections 804.20 and 321J.11, we hold that once defendant requested privacy for his attorney–client consultation, the officer was obligated to inform him of his right to a confidential, in-person conference at the jail. The remedy for a violation of section 804.20 rights is suppression of the chemical test evidence. Accordingly, we reverse the district court and remand the case for a new trial. We do not reach the constitutional claim.

## I.  Background Facts and Proceedings.

On March 31, 2013, just after 1:30 Sunday morning, Officer Brandon Dyer of the Ankeny Police Department observed the vehicle in front of him driving "extremely close to the center median."  He followed for several blocks and saw the vehicle's left side tires twice cross over the solid white line dividing the through lane from left-turning lanes.  Officer Dyer activated his police cruiser's flashing lights and initiated a traffic stop at 1:38 a.m.  The vehicle was driven by David Joseph Hellstern.  Hellstern is an attorney who practices primarily in family law with no experience in criminal law.

Officer Dyer asked Hellstern if he knew why he had been stopped.  Hellstern responded he did not.  Officer Dyer smelled alcohol and noted Hellstern had bloodshot, watery eyes.  Hellstern twice denied that he consumed alcohol that evening.  When Hellstern was asked for proof of registration and insurance, Officer Dyer had to ask a second time for the insurance information, even though the card was sitting on Hellstern's lap.  Officer Dyer noted Hellstern seemed lethargic, with his eyes drooping "as if he was falling asleep."  Officer Dyer had to repeat several more questions that Hellstern initially failed to answer.

Officer Dyer asked Hellstern to step out of his vehicle and continued to question him about his consumption of alcohol.  Hellstern, at this point, admitted he "had some drinks" and had "been drinking since one," but denied drinking after 5:30 p.m.  He denied feeling the effects of the alcohol, and when asked to rate the effects of the alcohol on a scale of one to ten, he simply responded, "I'm fine."

Officer Dyer asked Hellstern to take field sobriety tests.  Hellstern at first consented to the testing.  He initially denied being under the care of any doctor; taking any medication; having problems with his hips,

knees, or back; or having any problems with balance. But, when asked about his ability to walk in a straight line and balance on one foot, he claimed he could not because his knee was not "standard." When asked to explain what that meant, Hellstern began to speak but stopped. Hellstern then refused to take any of the field sobriety tests, including the horizontal-gaze nystagmus test, the walk-and-turn test, and the one-leg stand. He also refused the preliminary breath test.

About ten minutes after he made the initial stop, Officer Dyer placed Hellstern under arrest and took him to the Polk County Jail. There, Officer Dyer read Hellstern the implied-consent advisory at 2:13 a.m. and asked for an official breath sample at 2:15 a.m.

Officer Dyer next asked Hellstern if he wanted to make "any phone calls for any reason." Hellstern elected to call the law firm of Gourley, Rehkemper, and Lindholm at 2:19 a.m.; there was no answer, and Hellstern left no message. He called the firm's main number another three times before calling a different number at the firm and leaving a message. He next phoned five different attorneys and left voice mail messages. He also sent a text message to attorney Meegan Keller, a friend of his from law school who practices family and criminal law.

At about 3 a.m., Keller phoned Hellstern, and they spoke for thirteen minutes. During that call, Officer Dyer remained in the room five feet away from Hellstern. Hellstern saw Officer Dyer typing on his computer keyboard during the phone conversation, perhaps taking notes. Hellstern asked for privacy during the call, saying to Officer Dyer, "Can I have a moment with my attorney?" Officer Dyer first told Hellstern no, but then said, "You can, but . . . Not on the phone." Later during the same phone call with Keller, Hellstern asked Officer Dyer for "attorney–client privilege." Officer Dyer responded, "Not on the phone."

Officer Dyer knew Hellstern had a right to consult confidentially with his lawyer at the jail, but stopped short of telling Hellstern because "he didn't ask." Officer Dyer did not believe section 804.20 required him to "tell the detainee that an attorney can come down to the jail" for a confidential conference. If Officer Dyer had informed him of that option, Hellstern contends he "would have asked [Keller] to come down and talk to [him]" at the jail.

At one point during the phone call, Officer Dyer left the room for about forty-five seconds. Otherwise, he remained within earshot and could hear Hellstern's side of the conversation. Officer Dyer followed the "normal procedure" at the jail to remain in the staff room with Hellstern during the phone call. He cited "safety reasons," noting there were objects in the room, and "to cover ourselves, we always stay close to the person. So if they were to try to harm themselves or do other things, we could stop them immediately." Officer Dyer acknowledged Hellstern "never got aggressive or belligerent with him" and did nothing to suggest "he was a safety concern to himself or others."

After the call, Hellstern again attempted without success to contact an attorney from the Gourley firm. In total, Hellstern made fourteen phone calls, left five voice mails, sent one text message, and received a single phone call from attorney Keller. At approximately 3:18 a.m., Hellstern indicated he did not want to make any additional phone calls. When asked, he agreed that Officer Dyer had not hindered him from making any calls he wished to make.

Officer Dyer then asked Hellstern yet again if he would take the Breathalyzer test. Hellstern asked to use the restroom. Officer Dyer indicated Hellstern could use the restroom after the test, but Hellstern argued and said he could not wait to use the restroom. Officer Dyer

reiterated that he could use the restroom once he had made a decision on the test and completed the test if he chose to take it. After approximately fifteen minutes of discussing Hellstern's need to use the restroom, Hellstern told Officer Dyer he would consent to the test because Officer Dyer was making him. Officer Dyer repeated that it was Hellstern's decision to either consent or refuse and that he could use the restroom once the decision was made and the test was completed. Hellstern consented to the test, checked the consent box, and signed the form at approximately 3:36 a.m. Hellstern took the Breathalyzer test at that time.

After the test, Officer Dyer offered to take Hellstern to the restroom, but Hellstern said he wanted to wait to see the results of the test. The test showed his blood alcohol concentration was 0.194%, more than double the legal limit for intoxication (.08%). When asked if the results surprised him, Hellstern replied, "no."

Officer Dyer read Hellstern the notice of revocation and provided him with a copy of his test results. Hellstern was charged with OWI, first offense, and was issued a warning for the improper use of lanes. His vehicle was impounded, and Officer Dyer took his driver's license.

Hellstern filed a pretrial motion to suppress evidence and argued, in part, that Officer Dyer violated Iowa Code section 804.20 by failing to notify Hellstern that he had the right to consult privately with his attorney if the attorney met with him *in person*, as opposed to on the telephone and that Officer Dyer had violated Hellstern's rights under the Sixth Amendment and Iowa Constitution by failing to provide him privacy for his phone conversation with attorney Keller. That motion was denied by the district court, which concluded there is no "affirmative obligation on the officer to notify any defendant that they have the right

to request that their attorney come to the jail." The district court also denied Hellstern's motion to reconsider, ruling no right to counsel had attached under the Sixth Amendment or Iowa Constitution at the time of the chemical testing.

The case against Hellstern proceeded to a stipulated trial on the minutes of evidence. Hellstern was found guilty of OWI, first offense; sentenced to one year in jail, with all but three days suspended; and fined $1250. Hellstern appealed, and we retained his appeal to decide whether his statutory or constitutional right to counsel had been violated.

## II. Standard of Review.

"The district court's interpretation of Iowa Code section 804.20 is reviewed for errors at law." *State v. Walker*, 804 N.W.2d 284, 289 (Iowa 2011). We will affirm a district court's ruling on suppression of evidence if the court applied the law correctly and there is substantial evidence to support the court's fact-finding. *Id.*

## III. Analysis.

Hellstern argues the district court erred by denying his motion to suppress his breath-test results. He claims his request for privacy during his phone call with an attorney triggered the officer's obligation to disclose his right to a private attorney–client conference at the jail. Alternatively, he argues his right to counsel under article I, section 10 of the Iowa Constitution had attached, entitling him to privacy during his phone consultation. We are to decide the statutory issue first in order to avoid unnecessary adjudication of constitutional claims. *See Simmons v. State Pub. Defender*, 791 N.W.2d 69, 73–74 (Iowa 2010).

We begin our analysis with the text of Iowa Code section 804.20, which provides:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. *If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained.* If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. *An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay.* A violation of this section shall constitute a simple misdemeanor.

(Emphasis added.)

In *State v. Vietor*, we observed Iowa Code section 755.17, now section 804.20, provides for "a limited statutory right to counsel before making the important decision to take or refuse the chemical test under implied consent procedures." 261 N.W.2d. 828, 831 (Iowa 1978).[1] As we noted in *Walker*,

> [t]he arrestee's intoxication impairs his judgment as well as his driving ability. Such individuals must make a stressful and time-sensitive decision whether to take or decline the evidentiary breath test—a choice with significant consequences for their criminal liability and driving privileges.

804 N.W.2d at 291. " 'The legislative purpose of section 804.20 is to afford detained suspects the opportunity to communicate with a family member and [an] attorney.' " *Id.* at 290 (quoting *State v. Hicks*, 791 N.W.2d 89, 95 (Iowa 2010)). In *Hicks*, we concluded "the best way to

---

[1]The time for consultation is limited by the need to conduct chemical testing within two hours after defendant stopped driving. *See* Iowa Code § 321J.2(12)(*a*) (providing alcohol concentration established from specimen withdrawn within two hours of driving will be presumed to be the concentration at the time of driving); *Walker*, 804 N.W.2d at 290 ("The time for consultation is, however, effectively limited by law enforcement's interest in obtaining the test within two hours of the defendant's driving in order to preserve the [statutory] presumption . . . .").

further this statutory purpose is to liberally construe a suspect's invocation of this right." 791 N.W.2d at 95.

Section 804.20 requires police to allow the arrestee "to make a reasonable number of telephone calls as may be required to secure an attorney." Iowa Code § 804.20. The statute, by its terms, affords no privacy to a person in custody during a phone call to their attorney. *See id.* ("If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained.").[2] "Indeed, 'the telephone calls which section 804.20 assures to persons in custody are not intended to be confidential as is shown by the provision that they are to be made in the presence of the custodian.' " *Walker*, 804 N.W.2d at 291 (quoting *State v. Craney*, 347 N.W.2d 668, 678–79 (Iowa 1984) (concluding defendant's statement, "I killed my baby," is admissible when made in phone call to attorney that an officer overheard during booking process because no attorney–client privilege protects statements made in the presence of a third person)).

By contrast, the statute expressly provides a right to a confidential consultation between an attorney and client at the jail to be conducted "alone and in private." Iowa Code § 804.20; *Walker*, 804 N.W.2d at 291.[3] "[T]he 'right of privacy between attorney and client is well recognized and jealously guarded' during jailhouse consultations." *Id.* (quoting *State v. Coburn*, 315 N.W.2d 742, 748 (Iowa 1982)).

---

[2]The district court ruled that section "804.20 is clear that the officer is not required to provide privacy to someone who's on the telephone." Hellstern concedes in his appellate brief that, "[b]ased on the plain language of Iowa Code § 804.20, an arrestee does not have the *statutory* right to a confidential consultation with an attorney over the *phone*."

[3]As we explained in *Walker*, "[p]hysical separation of the attorney and detained client and/or visual monitoring of their conference may be required upon a showing by the State of an individualized safety or security risk justifying such measures." 804 N.W.2d at 296.

We have addressed the statutory disclosure obligations of the arresting officer in several cases. In *Didonato v. Iowa Department of Transportation*, 456 N.W.2d 367, 368 (Iowa 1990), a motorist was arrested for OWI and taken to the police station where he demanded to call a friend. *Id.* at 370–71. Section 804.20 provides a statutory right to call an attorney or family member, but not a friend. The officer declined to permit the call before Didonato signed an implied-consent form. *Id.* at 368. His driver's license was revoked on the ground the urine test showed a blood alcohol level above the limit for intoxication. *Id.* He contested his license revocation on the ground that his statutory right to a phone call was violated. *Id.* We noted our prior cases held that section 804.20 did not "require an officer to tell an arrested person that he has a right to counsel." *Id.* at 371 (citing *State v. Meissner*, 315 N.W.2d 738, 740 (Iowa 1982); *Vietor*, 261 N.W.2d at 831). However, we went on to explain disclosure obligations could be triggered by an arrestee's request:

> But when a request to make a phone call is made we do not believe the statutory purpose is met if the officer stands mute and refuses the request. Nor would there be any difference if the request is to call a friend. In these circumstances the statute is implicated and the officer should then advise for what purpose a phone call is permitted under the statute. If the individual still wants to make a phone call, subject to the [time] limitations announced in *Vietor*, the officer must allow the call, or place it for the arrested individual pursuant to the terms of section 804.20.

*Id.*[4] (citation omitted).

We applied the *Didonato* disclosure rule in *State v. Garrity*, 765 N.W.2d 592, 597 (Iowa 2009). Garrity, arrested for OWI (third offense), asked the officer at the jail to call a narcotics officer. *Id.* at 594. Garrity

---

[4]We affirmed Didonato's license revocation because he was allowed to phone his sister, an attorney, before he provided his urine specimen for chemical testing. *Didonato*, 456 N.W.2d at 371.

hoped he could broker a deal to reveal information about a drug operation in exchange for a promise of no jail time for his OWI. *Id.* The arresting officer informed Garrity he could call the narcotics officer after he was released. *Id.* Garrity argued that once he had requested a phone call the officer had a duty to advise him of the scope of his rights to a phone call under section 804.20. *Id.* We concluded, "If, as here, the officer turns down the arrestee's phone call request because the request is to call someone not contemplated in the statute, the officer must explain the scope of the statutory right." *Id.* at 597.

We revisited the arresting officer's statutory obligations under section 804.20 in *Hicks.* Hicks was arrested for OWI and made repeated requests at the police station to phone his mother, stating he wanted a ride home. *Hicks,* 791 N.W.2d at 92. The officer denied his requests, and Hicks ultimately refused the Breathalyzer test. *Id.* He moved to suppress evidence of his test refusal. *Id.* The district court denied his motion, and Hicks was convicted of OWI (second offense) after a jury trial. *Id.* We reversed his conviction and remanded the case for a new trial on grounds he was denied his statutory right to place a phone call to a family member. *Id.* at 98. We said this about the proper balance to be struck between the detainee's statutory rights and law enforcement:

> By providing detainees this statutory right, the legislature has deemed that a detainee's right to communicate with family or counsel to be a tolerable burden upon law enforcement and suitably balances the state's law enforcement needs with the right of the accused.

*Id.* at 95. We noted that "[b]ecause of the disparity in power between detaining officers and detained suspects during the detention process," section 804.20 "requires law enforcement to take affirmative action to ensure the request for a phone call is honored." *Id.* at 97.

The legislature did not amend section 804.20 in response to the *Didonato*, *Garrity*, or *Hicks* decisions. We can infer by its silence that the legislature acquiesced in our consistent interpretations of the disclosure obligations in this statute dating back to our *Didonato* decision in 1990. *See Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 688 (Iowa 2013) (concluding legislature acquiesced in repeated judicial interpretations spanning many years that punitive damages are not recoverable under Iowa Civil Rights Act). Moreover, "[w]e are slow to depart from stare decisis and only do so under the most cogent circumstances." *Id.*

In *Walker*, we reiterated that "section 804.20 'is to be applied in a pragmatic manner, balancing the rights of the arrestee and the goals of the chemical-testing statutes.'" 804 N.W.2d at 291 (quoting *State v. Tubbs*, 690 N.W.2d 911, 914 (Iowa 2005)). We read section 804.20 "together with the implied-consent provisions of Iowa Code chapter 321J." *Id.* at 290. "'[W]e have continuously affirmed that the primary objective of the implied consent statute is the removal of dangerous and intoxicated drivers from Iowa's roadways in order to safeguard the traveling public.'" *Id.* (quoting *Welch v Iowa Dep't of Transp.*, 801 N.W.2d 590, 594 (Iowa 2011)). We must strike the proper balance in this case, examining our precedent under both section 804.20 and the implied-consent provisions of chapter 321J.

We most recently summarized an officer's disclosure duties under section 804.20 as follows:

> Iowa Code section 804.20 does not require a peace officer to inform the detainee of his or her right to make a telephone call. In *Garrity*, we observed nevertheless that a detainee may be aware he or she has a right to make a telephone call; however, the detainee may be unaware that a statute limits to whom such a call may be made. For that reason, if the

> detainee suggests calling someone outside the scope of individuals authorized by the statute, the peace officer, who knows the statutory scope, must clarify to the detainee the scope of individuals to whom a telephone call may be made under Iowa Code section 804.20. *In short, the absence or shortage of knowledge on the detainee's part warranted enabling the detainee to invoke his or her rights by legally inaccurate requests.*

*State v. Lukins*, 846 N.W.2d 902, 908 (Iowa 2014) (emphasis added) (citations omitted). In *Lukins*, the arrestee asked for a "re-check" of his Breathalyzer test. *Id.* at 904–05. Iowa Code section 321J.11 allows a person who submits to a breath test to have an independent blood or urine test at his own expense, but provides no right to repeat a Breathalyzer test. *Id.* at 909–10. We nevertheless held the arrestee's imprecise request for a "re-check" adequately invoked his statutory right to another chemical test. We concluded, based on our cases construing section 804.20, that "if an imprecise statement, reasonably construed, implicates the statute, then the officer should inform the detainee of his or her right to an independent chemical test under Iowa Code section 321J.11." *Id.* at 909.[5]

Thus, under *Didonato*, *Garrity*, and *Lukins*, the arrestee's specific request was beyond the scope of the statutory right. We nevertheless held the request could be reasonably construed as invoking a right conferred by the statute and, thereby, triggering the officer's duty to explain to the arrestee what he was allowed to do. Similarly, in this case, Hellstern unequivocally requested a private attorney–client conference before he submitted to the Breathalyzer test. He specifically asked for a private phone consultation. Section 804.20 allows confidential consultations in person at the jail but not by phone. *See Walker*, 804

---

[5]Three justices dissented. *Lukins*, 846 N.W.2d at 913–15 (Waterman, J., dissenting) (concluding cases requiring disclosures under section 804.20 were inapplicable to section 321J.11).

N.W.2d at 291. We must decide whether Hellstern's request can be reasonably construed as invoking his statutory right to a confidential consultation with his attorney, thereby requiring Officer Dyer to inform him the attorney would have to come to the jail to consult confidentially.

During his phone call with attorney Keller, Hellstern asked Officer Dyer, "Can I have a moment with my attorney," indicating he wanted the officer to step out of earshot. Officer Dyer responded, "You can, but not on the phone." Later, during the same phone call, he told Officer Dyer he wanted "attorney–client privilege." Officer Dyer responded, "Not on the phone." As noted above, section 804.20 permits phone calls "in the presence" of the officer, while providing for confidential *in-person* attorney–client conferences at the jail or place of detention. Hellstern asked for something the statute did not require law enforcement to provide—a private teleconference. Officer Dyer's response to that request for privacy, "[n]ot on the phone," was technically correct. Yet, Hellstern indisputably asked for a private consultation with his lawyer, which the statute allows at the jail. Hellstern argues, under our precedent, he adequately invoked his statutory right to a private attorney–client consultation. Therefore, he contends, Officer Dyer was required to disclose to Hellstern that the lawyer would have to come to the jail for a confidential conference. We agree.

The State argues we should not impose such a disclosure duty on the arresting officer when the arrestee is already on the phone with a lawyer. It is not uncommon, however, for civil practitioners unfamiliar with informed-consent procedures to get the late night phone call from a client who needs quick advice on the consequential decision whether to take or refuse the Breathalyzer test. Imposing a disclosure obligation on the officer familiar with section 804.20 addresses this disparity in

knowledge with a minimal burden on law enforcement. *See Hicks*, 791 N.W.2d at 95. The officer's disclosure obligations should not turn on the relative sophistication of the detainee and caller, which would require case-by-case fact-finding. We prefer the clarity of bright-line rules in time-sensitive interactions between citizens and law enforcement, such as during informed-consent procedures. *Welch*, 801 N.W.2d at 601 ("Clarity as to what the law requires . . . is especially beneficial when the law governs interactions between the police and citizens. Law enforcement officials have to make many quick decisions as to what the law requires where the stakes are high . . . . A clear, teachable rule is a high priority.").

We hold that Hellstern adequately invoked his statutory right to a confidential consultation with his attorney under section 804.20 by requesting privacy during his phone call, triggering Officer Dyer's duty to inform him that the attorney must come to the jail for a confidential conference. Officer Dyer's failure to explain the scope of the right to a confidential consultation violated section 804.20. The remedy for such a violation of section 804.20 is suppression of the chemical test results. *See Walker*, 804 N.W.2d at 296; *see also Lukins*, 846 N.W.2d at 911, 913 (same remedy for nondisclosure violation of section 321J.11).[6]

Because our resolution of the statutory question is dispositive, we need not reach and do not decide the constitutional claim.

---

[6]The State argues it was too late for an in-person attorney–client conference, but concedes the record supports a finding that attorney Keller could have arrived at the jail before the end of the two-hour period after Hellstern was driving. In any event, we do not require the defendant to prove he was prejudiced by the violation of his rights under section 804.20. *See Walker*, 804 N.W.2d at 296 ("The remedy for this violation is suppression of the breath-test results, regardless of prejudice or lack thereof.").

**IV. Disposition.**

For the foregoing reasons, we hold the district court erred by denying Hellstern's motion to suppress his chemical test results. Accordingly, we reverse the district court's judgment and conviction and remand the case for a new trial.

**REVERSED AND REMANDED.**

All justices concur except Cady, C.J., and Zager, J., who concur specially.

**CADY**, **Chief Justice (concurring specially).**

I concur in the opinion of the majority. I write separately to express my view that it is time to reverse our prior cases and require a peace officer to advise an arrested person of the statutory right to counsel.

While we have held that a peace officer is not required to advise an arrested person of the right to counsel with a family member and attorney under Iowa Code section 804.20 (2013), we have also held the officer must advise the arrested person of the right for the purpose of assisting the person in attempting to exercise the right. *Didonato v. Iowa Dep't of Transp.*, 456 N.W.2d 367, 371 (Iowa 1990). Although the second rule was developed to prevent the lack of knowledge of the statutory right from becoming a trap impeding the exercise of the right, the application of the rule has become so nuanced that it has now become a trap for the state. No rule of law should work as a trap for any person or the government. To ensure a fair and neutral application of the statute into the future, our prior cases should be reversed and replaced with a simple rule that a peace officer must advise every arrested person of the statutory right to counsel.

Zager, J., joins this special concurrence.