# IN THE SUPREME COURT OF IOWA

No. 17–0637

Filed January 18, 2019

**STATE OF IOWA,**

    Appellee,

vs.

**ROBERT ARTHUR DAVIS,**

    Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, District Associate Judge.

Robert Davis seeks further review of a court of appeals decision affirming his conviction for operating while intoxicated, second offense, and upholding a district court ruling denying his motion to suppress. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Kent A. Simmons, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

**MANSFIELD, Justice.**

A deputy responded to a motor vehicle accident in the midst of a snowstorm. One of the drivers smelled of an alcoholic beverage, he failed a horizontal-gaze nystagmus test, and his wife admitted they had been drinking. Because of the bad weather conditions, the deputy decided to transport him to a protected location—the sally port of the nearby law enforcement center—for the completion of field sobriety testing. The driver requested the opportunity to talk to his wife before leaving the scene, but the deputy denied the request and informed the driver he could talk to her after the field sobriety testing. The driver later failed two field sobriety tests at the sally port. He was arrested, moved to the jail's intake room, and given the opportunity to call his wife and attorney. After speaking with his attorney, the driver submitted to a chemical breath test which revealed a blood alcohol concentration of .128. The driver was subsequently charged with and convicted of operating while intoxicated, second offense.

We are asked to decide whether the driver's rights under Iowa Code section 804.20 were violated when the deputy denied his request to call his wife until after field sobriety testing occurred at the sally port. We conclude they were not because the sally port was a location for testing, not a "place of detention" within the meaning of Iowa Code section 804.20. Accordingly, we affirm the driver's conviction and sentence and the decision of the court of appeals.

## I. Background Facts and Proceedings.

On February 25, 2015, at 10:38 p.m., Muscatine County Sheriff's Deputy Edward Cardenas responded to a report of a motor vehicle collision. Weather and road conditions at the time were poor: snow was actively falling, visibility was reduced, and the roads were slippery and one

hundred percent snow-covered. Two or three inches of snow were already on the ground. When Deputy Cardenas arrived, several officers and emergency personnel were already on the scene. Deputy Cardenas was assigned to handle the accident report and subsequent investigation.

Deputy Cardenas contacted the Davises, whose vehicle had been involved in the collision. They were sitting in the back of their Toyota Tundra which was off of the road in a ditch. Deputy Cardenas detected the slight odor of ingested alcohol emanating from inside the vehicle. While emergency medical technicians (EMTs) took Mr. Davis into an ambulance for evaluation, Deputy Cardenas spoke with Davis's wife. Davis's wife told Deputy Cardenas that they had been returning home from supper, that Davis had been driving, and that they both had previously consumed alcohol.

Deputy Cardenas then spoke with Davis individually after the EMTs had completed their assessment. Deputy Cardenas detected the odor of alcohol wafting directly from Davis's person. Davis admitted he had had three rum and colas. Deputy Cardenas also observed that Davis had bloodshot and watery eyes. Deputy Cardenas conducted a horizontal-gaze nystagmus test on Davis and found six out of six possible signs of impairment.

Deputy Cardenas told Davis he suspected him of being under the influence of alcohol and wanted to conduct further field sobriety testing. Deputy Cardenas explained to Davis that because of the weather conditions, he would have to transport him to the Muscatine County Jail to perform the field sobriety testing in a controlled environment. Davis said something to his wife about calling his attorney while he continued to cooperate with Deputy Cardenas.

At approximately 10:57 p.m., Deputy Cardenas escorted Davis to his patrol car where he seated him in the rear without handcuffs. Deputy Cardenas also read the *Miranda* rights to Davis out of an abundance of caution. While Davis was in the squad car but before they embarked, Davis asked Deputy Cardenas if he could talk to his wife before leaving the scene. Deputy Cardenas replied, "Once we are done you can. Not right now."

Deputy Cardenas then went up to Davis's wife and informed her that he was transporting Davis to the sally port (i.e., garage) at the jail to perform field sobriety testing. Deputy Cardenas also retrieved Davis's cell phone from her so Davis could use it later. While Deputy Cardenas and Davis were en route, Deputy Cardenas explained to Davis,

> I have your cell phone, it's in my pocket, and I will give that to you as soon as we get down to the jail. And basically what we are using the jail for is we are using it for their garage, so we can be outside this weather so I can do a couple more tests on you, give you an opportunity to complete those tests, and we can go from there, okay? And if we determine that we don't need to go further, then I can bring you back to your residence.

At approximately 11:14 p.m., Deputy Cardenas and Davis arrived at the sally port. Davis performed two field sobriety tests for Deputy Cardenas. Based on the results of these tests, at approximately 11:23 p.m., Deputy Cardenas placed Davis under arrest for operating while intoxicated and took Davis to the jail's intake room. At 11:25 p.m., Deputy Cardenas advised Davis he was allowed to place a phone call to anyone he wished.

Davis first called his wife and asked her to call his attorney. Deputy Cardenas inquired of Davis if he wished to place any further calls. Davis then contacted his attorney, Greg Johnston, at approximately 11:32 p.m.

After speaking to Johnston, Davis declined to answer any further questions or sign any documents until Johnston had appeared.

At this point, Deputy Cardenas read Davis the implied-consent advisory and formally requested Davis to provide a breath sample for chemical testing. Deputy Cardenas, however, allowed Davis to wait to make a decision on whether or not to refuse chemical testing until he had a chance to speak personally with Johnston. Upon arrival, Johnston engaged in discussion with Davis, within view but out of earshot of Cardenas. After consulting with his attorney, Davis submitted to a chemical breath test, which indicated a blood alcohol concentration of .128.

On March 30, 2015, Davis was charged by trial information with operating while intoxicated, second offense. *See* Iowa Code § 321J.2(1) (2015). Davis filed a motion to suppress evidence gathered from both the field sobriety tests and the chemical breath test, alleging the evidence had been obtained in violation of his statutory right to communicate with counsel or a family member under Iowa Code section 804.20.

Following a hearing, the district court held the field sobriety tests performed at the jail's sally port should be suppressed because Davis was denied the opportunity to contact his wife after being detained for field sobriety testing. The district court found Davis had been "restrained of his liberty" within the meaning of Iowa Code section 804.20. The district court also found the jail's sally port was a "place of detention" within the meaning of section 804.20. However, the district court held the results of Davis's chemical breath test should not be suppressed because Davis had an opportunity to consult with both his wife and his attorney before submitting to that test. The court found,

The State's misconduct by violating Iowa Code section 804.20 ended when the defendant was allowed to consult with his wife by phone and his attorney in person. From that point forward there was no violation of Iowa Code Section 804.20 and evidence collected after that point is admissible.

Davis waived his right to a trial by jury. The matter was submitted for a bench trial based on the suppression hearing transcript and several exhibits, including the transcript of Davis's revocation hearing before the Iowa Department of Transportation. The district court found Davis guilty of operating while intoxicated, second offense, and sentenced him to seven days in jail with credit for time served, fined him $1875, and assessed surcharges.

Davis appealed. He asserted on appeal that the chemical test results *also* should have been suppressed because of Deputy Cardenas's refusal to allow Davis to speak to his wife prior to the field sobriety tests. We transferred the appeal to the court of appeals.

The court of appeals affirmed Davis's conviction. In doing so, the court of appeals disagreed with the district court as to when Davis's section 804.20 rights attached. The court of appeals held that Davis's section 804.20 rights had not been triggered until completion of the field sobriety testing at the sally port when the investigatory stage of the traffic stop had ended. The court of appeals thus held Davis was not entitled to suppression of the field sobriety tests or the chemical breath test because his section 804.20 rights were not violated.

Davis applied for further review, and we granted his application.

## II. Standard of Review.

"We review a district court's interpretation of Iowa Code section 804.20 for errors at law." *State v. Lamoreux*, 875 N.W.2d 172, 176 (Iowa 2016). If the district court applied the law correctly and substantial

evidence supports the court's findings of fact, we will affirm the district court's ruling on a motion to suppress. *Id.*

### III. Analysis.

We must decide whether Davis's rights under Iowa Code section 804.20 were violated when Deputy Cardenas refused to allow Davis the opportunity to speak with his wife until after field sobriety testing had been completed at the jail's sally port. Section 804.20, entitled "Communications by arrested persons," provides,

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of phone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay. A violation of this section shall constitute a simple misdemeanor.

Iowa Code § 804.20.

When interpreting section 804.20, our primary goal is to give effect to the legislature's intent as expressed in the statute's words. *Lamoreux,* 875 N.W.2d at 177. "We seek a reasonable interpretation which will best effectuate the purpose of the statute . . . ." *State v. Walker*, 804 N.W.2d 284, 290 (Iowa 2011) (quoting *State v. Johnson,* 528 N.W.2d 638, 640 (Iowa 1995)). We give words their ordinary meaning absent legislative definition. *Id.* "Interpreting a statute requires us to assess it in its entirety to ensure our interpretation is harmonious with the statute as a whole rather than

assessing isolated words or phrases." *State v. Pettijohn*, 899 N.W.2d 1, 16 (Iowa 2017).

When a statute is ambiguous, we must "rely on principles of statutory construction to resolve the ambiguity." *State v. Coleman*, 907 N.W.2d 124, 135 (Iowa 2018). A statute is ambiguous " 'if reasonable minds could differ or be uncertain as to the meaning of the statute' based on the context of the statute." *Id.* (quoting *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 471 (Iowa 2017)). "We . . . deem it important to place the statute's words in context." *Lamoreux*, 875 N.W.2d at 177.

"Additionally, we have said that a suspect's invocation of his or her rights under Iowa Code section 804.20 should be 'liberally construe[d].' " *Id.* (alteration in original) (quoting *State v. Hicks*, 791 N.W.2d 89, 95 (Iowa 2010)). However, we also apply section 804.20 pragmatically, "balancing the rights of the arrestee and the goals of the chemical-testing statutes." *Id.* (quoting *State v. Tubbs*, 690 N.W.2d 911, 914 (Iowa 2005)).

Section 804.20 provides "a limited statutory right to counsel before making the important decision to take or refuse the chemical test under implied consent procedures." *State v. Hellstern*, 856 N.W.2d 355, 361 (Iowa 2014) (quoting *State v. Vietor*, 261 N.W.2d 828, 831 (Iowa 1978)). When section 804.20 is violated, exclusion of evidence is the appropriate remedy. *Hicks*, 791 N.W.2d at 97. "The exclusionary rule extends to the exclusion of breath tests, breath test refusals, and non-spontaneous statements . . . ." *Id.* (quoting *State v. Garrity*, 765 N.W.2d 592, 597 (Iowa 2009)).

"We begin by examining the actual language of section 804.20. *Lamoreux*, 875 N.W.2d at 177. Reading the statute as a whole, we believe it contemplates *two* intersecting events—(1) an individual being arrested or otherwise restrained of his liberty so as to be in the custody of another

and (2) that same person arriving at the place of detention. *See* Iowa Code § 804.20. Notably, read in its entirety, Iowa Code section 804.20 uses the term "the place of detention" interchangeably with "the jail or other place of custody." *Compare* Iowa Code § 804.20 (first sentence), *with id.* (fifth sentence).

The district court and the court of appeals disagreed as to the meaning of "the place of detention." The district court found that the sally port was a "place of detention" because Davis was "restrained of his liberty." The court of appeals found that it was not a place of detention because Davis was there for purposes of field testing, not to be detained.

In *State v. Krebs*, we held that a person who was denied the opportunity to call his wife during field sobriety testing was not deprived of any rights under Iowa Code section 804.20. 562 N.W.2d 423, 424, 426 (Iowa 1997) (per curiam). There the defendant was pulled over for driving without headlights at 2:22 a.m. *Id.* at 424. The deputy had a concern about the defendant's sobriety based on prior contact with him earlier that morning. *Id.* During field sobriety testing, the defendant received a page from his wife and asked to call her, but was told he could only do so "at the conclusion of the matter." *Id.* We concluded,

> Field sobriety tests are used by peace officers to determine whether there are reasonable grounds to believe a person is intoxicated. These tests are part of an officer's investigation to determine if a criminal offense has occurred. At this point in the investigation, the defendant is merely being detained by the officer, not restrained of his liberty. Although section 804.20 may be implicated in a situation short of a formal arrest, we do not believe the language "restrained of the person's liberty for any reason whatever" extends to the investigatory portion of a traffic stop. To interpret the statute otherwise would thwart all investigations upon a person's request to contact a family member or an attorney. We do not believe the legislature intended such an impediment in enacting the protections of the statute.

*Id.* at 426 (citations omitted).

On the other hand, in *State v. Moorehead*, we held a defendant had effectively invoked his Iowa Code section 804.20 right to contact his mother at the scene of a traffic stop. 699 N.W.2d 667, 671 (Iowa 2005). There, the officer observed the defendant speeding and swerving over the centerline before eventually coming to a stop on the wrong side of an adjacent street. *Id.* at 669. The defendant smelled of alcohol, his speech was slurred, and his eyes were glazed. *Id.* The defendant failed three field sobriety tests and a preliminary breath test. *Id.* at 669, 671. The deputy placed the defendant in the back of his patrol car, telling him that he was definitely over the legal limit and that he was taking him to the police station for one more test. *Id.* at 699. The deputy later testified he considered the defendant "technically" under arrest once he had failed the field sobriety tests. *Id.* at 671.

While in the patrol car, the defendant asked if he could speak to his mother on the phone. *Id.* at 669. The defendant, however, was not given the opportunity to call her after he arrived at the police station and before taking the chemical breath test, on which he recorded a .182 blood alcohol concentration. *Id.* at 669–70. We found that under these circumstances, the defendant's request to speak to his mother was a proper invocation of Iowa Code section 804.20 and should have been honored when he arrived at the police station. *Id.* at 671.

It is worth reading *Moorehead* with care. We emphasized that when the defendant was being put in the patrol car, "[t]he investigatory stage of the stop had ended." *Id.* The defendant had failed the field tests and, as we have already noted, in the view of the deputy, he was " 'technically' under arrest." *Id.* We continued,

> As a consequence, the police were obligated to honor Moorehead's request 'without unnecessary delay after arrival at the place of detention,' in this case the police station. Because the police did not do so, they violated Moorehead's statutory right to contact a family member.

*Id.* at 672 (footnote omitted) (quoting Iowa Code § 804.20).

To summarize, in *Moorehead* the defendant was in custody (" 'technically' under arrest") at the time of his request to make a call, *id.* at 671; in *Krebs* he was not, 562 N.W.2d at 426. But even then, we did not conclude in *Moorehead* the defendant had a right to make a phone call until he arrived at "the place of detention." 699 N.W.2d at 672.

Applying *Krebs* and *Moorehead* here, we believe that Davis's rights under Iowa Code section 804.20 were not abridged. Davis, like *Krebs* and unlike *Moorehead*, asked to make a call *before* completing field sobriety testing. The only practical difference between *Krebs* and this case is that Davis performed most of his field sobriety testing at the sally port of the jail, rather than at the roadside. It is undisputed that the location of the testing was shifted only because of the bad weather: it was snowing at the time and there was already a two to three inch snow cover on the ground.

The statutory language supports our conclusion. In statutory terms, the sally port was not a "place of detention." Iowa Code § 804.20. It was not a "jail or other place of custody." *Id.* It was a convenient, dry location for field sobriety tests. Functionally, it was the field for the "field" sobriety tests.

Sally ports are not a "place of detention" for persons, but a parking area for vehicles. The fact that the sally port was attached to the jail is immaterial because Davis's freedom was not any more restricted there than it would have been at the scene of the accident. Deputy Cardenas did not handcuff Davis, and he did not take him to the sally port for the

purpose of detaining him. Deputy Cardenas advised Davis he would return him to his residence if he passed the tests.

The legislative history behind Iowa Code section 804.20 buttresses this interpretation. The statute dates back to 1959. *See* 1959 Iowa Acts ch. 373, § 1 (then codified at Iowa Code § 755.17 (1962)). It was entitled, "Communications by Arrested Persons," and still bears that title. *Id.*; Iowa Code § 804.20 (2015). The title of a statute can guide us in interpreting it. *See Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212, 220–21 (Iowa 2016); *In re Estate of Sampson*, 838 N.W.2d 663, 667 (Iowa 2013). Also, in 1959, as now, it specifically grants a right to make *phone calls* "after arrival at the place of detention." *See* 1959 Iowa Acts ch. 373, § 1. Cell phones didn't exist in 1959, and therefore the "place of detention" contemplated by the statute would not have been a roving location for field sobriety tests that lacked landline telephones, but instead the inside of a building containing landlines. *See* Iowa Code § 4.6(2) (stating that in construing an ambiguous statute, the court may consider "[t]he circumstances under which the statute was enacted").

Our interpretation is also consistent with another jurisdiction's interpretation of an analogous statute. In *Wardlow v. State*, the Alaska Court of Appeals held the right to place a phone call to an attorney, relative, or friend does not attach until an arrestee is "brought to a place of detention such as a police station or a jail" despite statutory language that required a prisoner be granted telephone communication "immediately after an arrest." 2 P.3d 1238, 1249–50 & n.24 (Alaska Ct. App. 2000). In *Wardlow*, an officer arrested the defendant on an outstanding warrant after being approached by a woman who had escaped from the defendant's camper claiming she had been raped. *Id.* at 1248. After the defendant was placed in the patrol car, he asked to be taken to

the jail so he could contact an attorney and go to bed. *Id.* The officer had a cell phone with him but did not offer to let the defendant use this phone to call an attorney. *Id.* On appeal, the defendant argued the officer was obligated to allow him to use his phone to call an attorney once he expressed the desire to make the call before being transported to the police station. *Id.*

In a section entitled, "Rights of prisoner after arrest," Alaska law provides in relevant part,

> Immediately after an arrest, a prisoner shall have the right to telephone or otherwise communicate with the prisoner's attorney and any relative or friend, and any attorney at law entitled to practice in the courts of Alaska shall, at the request of the prisoner or any relative or friend of the prisoner, have the right to immediately visit the person arrested.

Alaska Stat. Ann. § 12.25.150(b) (West, Westlaw current through 2018 Reg. Sess.).

In interpreting the phrase "[i]mmediately after an arrest," the Alaska Court of Appeals provided the following discussion:

> Wardlow asserts that the statutory right to communicate with an attorney arises as soon as the police take physical custody of an arrestee—that if the arrestee asks for a telephone call, and if some type of telecommunications equipment is available at the scene of the arrest, the police must immediately honor the arrestee's request.
>
> . . . .
>
> Wardlow's argument poses a question of statutory interpretation—one that is made more difficult because the provision granting arrestees the right to "telephone or otherwise communicate" with attorneys, relatives, and friends was enacted in 1957, long before the advent of our current mobile communications technology. When our legislature decreed forty years ago that arrestees should have the right to "immediately" communicate with their attorneys, the legislature was not thinking of police officers carrying cellular telephones or laptop computers capable of sending wireless faxes and e-mail.

But upon reflection, we believe that the availability of new portable communications technology does not affect the working of the statute. Instead, we conclude that an arrestee's statutory right to "immediate" communication with attorneys, relatives, and friends normally does not attach until the arrestee is brought to a place of detention such as a police station or a jail.

*Id.* at 1249–50 (footnote omitted).

Thus, the court ultimately held the officer could lawfully wait until arrival at the police station to allow telephone communication, concluding,

[T]he purposes of the statute and the presumed intent of the legislature are served better by a rule that defines a particular event—the arrestee's arrival at the place of detention—as the event that triggers the arrestee's right to make a phone call.

*Id.* at 1250.

The reasoning of the Alaska Court of Appeals applies with even more force here, because there is no mandate in the Iowa statute that the suspect be allowed to make a phone call "[i]mmediately." Alaska Stat. Ann. § 12.25.150(b). Instead, the right to make a phone call does not arise in Iowa until the suspect arrives "at the place of detention." Iowa Code § 804.20.

Two further points should be noted. We have characterized Iowa Code section 804.20 as conferring "a limited statutory right to counsel before making the important decision to take or refuse a chemical test under implied consent procedures." *Hellstern*, 856 N.W.2d at 361 (quoting *Vietor*, 261 N.W.2d at 831); *see also State v. Lyon*, 862 N.W.2d 391, 400 (Iowa 2015); *Walker*, 804 N.W.2d at 290; *Tubbs*, 690 N.W.2d 914; *State v. Campbell*, 294 N.W.2d 803, 804–05 (Iowa 1980). "[A] person arrested for OWI has a limited statutory right to counsel before being required to submit to or refuse a chemical test." *State v. Frake*, 450 N.W.2d 817, 818 (Iowa 1990). Davis in fact received that right.

We have also said that in interpreting Iowa Code section 804.20, we should "liberally construe a suspect's invocation" of the statutory right to call or confer with a family member counsel. *Hicks*, 791 N.W.2d at 95; *see also Lamoreux*, 875 N.W.2d at 177; *Hellstern*, 856 N.W.2d at 361. This case, though, is not about Davis's *invocation* of his right. No one disputes Davis asked to make a call. The issue is when a call can be made.

The district court erred by collapsing into one the *two* separate events required to trigger the right to call a relative or attorney under Iowa Code section 804.20. That is, the court found the sally port to be a "place of detention" simply because Davis—although not under arrest—was "restrained of his liberty." But if that were so, anyone would have a right to call a relative or an attorney as soon as that person was temporarily detained at the side of the road and asked to perform field sobriety tests. *Krebs* would have been decided the other way. In fact, carrying Davis's argument to its logical conclusion, anyone would have a right to have a private consultation with an attorney out of the sight of law enforcement before submitting to field testing. *See generally Walker*, 804 N.W.2d 284 (recognizing that section 804.20 requires an opportunity for an attorney consultation in a private room without video surveillance). That makes no sense and is contrary to section 804.20's text.

Accordingly, Davis was entitled to the opportunity to place a phone call "without unnecessary delay" only after being arrested and brought from the sally port to the jail's intake room. Iowa Code § 804.20. We conclude no violation of Iowa Code section 804.20 occurred, and the district court did not err in denying Davis's motion to suppress the chemical test result.[1]

---

[1]The court of appeals also relied on *State v. Robinson*, 859 N.W.2d 464 (Iowa 2015). There we held that Iowa Code section 804.20 did not confer rights on a defendant

**IV. Conclusion.**

For the foregoing reasons, we affirm the decision of the court of appeals and Davis's conviction and sentence.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

---

to communicate with his counsel in a particular manner *after* he had been formally charged. *See id.* at 486–87. We said that "Iowa Code section 804.20 applies to the period after arrest but prior to the formal commencement of criminal charges." *Id. Robinson*, of course, was concerned with the endpoint at which section 804.20 applied, not the beginning. *Robinson* is not controlling on the question of precisely when section 804.20 rights attach.