# IN THE COURT OF APPEALS OF IOWA

No. 22-0104
Filed July 26, 2023

**DARRYL TYSON,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Paul D. Miller (summary disposition) and Ian K. Thornhill (motion for postconviction DNA testing), Judges.

Darryl Tyson appeals the denial of his second application for postconviction relief and his motion for DNA testing. **AFFIRMED.**

Erin Patrick Lyons of Juvenile Public Defender's Office, Waterloo, for appellant.

Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee State.

Considered by Ahlers, P.J., Buller, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**DANILSON, Senior Judge.**

Darryl Tyson appeals the denial of his second application for postconviction relief (PCR), challenging the court's ruling on his motion for DNA testing. Upon our review, we affirm.

**I.      *Background Facts and Proceedings***

The specific factual bases of Tyson's convictions are largely irrelevant for purposes of this appeal. In 2012, he pled guilty to first-degree burglary, second-degree robbery, third-degree sexual abuse, and second-degree theft following a sexual assault and robbery of an 81-year-old woman in her Cedar Rapids home. The district court sentenced Tyson to respective prison terms not exceeding twenty-five years, ten years, ten years, and five years and ordered them to run consecutively, for a total of fifty years. He did not file a direct appeal.

Tyson initiated his first PCR application in 2012. In addition to other claims, Tyson challenged the DNA testing in his case. Following a hearing, the court denied his application, stating in part, "Tyson did not prove in the instant case that his suggestions for challenging the DNA evidence would have even the possibility of reaching different conclusions." Tyson appealed the court's ruling on a different issue, arguing he "did not understand that he was pleading to consecutive sentences totaling 50 years" and his PCR counsel was ineffective "in the presentation of this claim." *See Tyson v. State*, No. 15-1863, 2017 WL 1088102, at *1 (Iowa Ct. App. Mar. 22, 2017). This court rejected Tyson's claims and affirmed the denial of his PCR application. *See id.* at *1–2.

Tyson filed this PCR application in 2018, raising a claim of actual innocence, contending "DNA found in discovery is not a match to that of applicant an[d]

applicant ha[s] personel [sic] documents to prove his claim." Tyson then filed a motion for postconviction DNA testing of evidence seized during his underlying criminal proceeding under Iowa Code section 81.10 (Supp. 2019).[1] He claimed "DNA analysis on evidence [secured in relation to the crime] would provide exculpatory evidence substantiating his innocence and identify the actual perpetrator of the crime." The State resisted, arguing Tyson's motion was "deficient in several areas," and further stating, "There's been nothing provided to this court that calls into question that the prior DNA testing [connecting Tyson to the crime] was flawed in any way." Following a hearing, the court denied Tyson's motion for DNA testing, finding the motion failed under section 81.11(1)(a), based on Tyson's concession he was not requesting DNA profiling using "a new method or technology that [wa]s substantially more probative" than the DNA profiling previously performed. *See* Iowa Code § 81.11(1)(a).

The State then filed a motion for summary disposition, claiming Tyson's PCR application was outside the three-year statute of limitations. The court granted the State's motion, concluding Tyson's arguments regarding an alibi and DNA found in discovery were not newly-discovered evidence and there was no genuine issue of material fact regarding his actual-innocence claim. Tyson appeals the court's rulings on his motion for DNA testing and his PCR application.

---

[1] Tyson initiated his PCR application in 2018, but he filed his motion for DNA testing in late 2019, so we apply sections 81.10 and 81.11, as amended effective July 1, 2019, to his claim. *Cf. State v. Beeman*, No. 20-1288, 2021 WL 4891010, at *1 (Iowa Ct. App. Oct. 20, 2021).

## II. Standard of Review

We review the court's ruling on the issue of DNA testing and the court's statutory interpretation for errors at law. *See Mark v. State*, No. 09-0800, 2013 WL 5498146, at *1 (Iowa Ct. App. Oct. 2, 2013). We also review the summary disposition of PCR applications for errors at law. *See Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019). "[F]or a summary disposition to be proper, the State must be able to prevail as if it were filing a motion for summary judgment in a civil proceeding." *Id.* (quoting *Schmidt v. State*, 909 N.W.2d 778, 784 (Iowa 2018)).

## III. Discussion

On appeal, Tyson contends the court erred in "denying his motion for postconviction DNA testing and, consequently, in granting the State's motion for summary judgment." With regard to his PCR application, Tyson's argument hinges on the court's denial of his motion for DNA testing. Specifically, Tyson claims the court erred in its "rigid" interpretation of section 81.11(1) in denying his motion.

Iowa Code section 81.10(1) states:

A defendant who has been convicted of a felony or aggravated misdemeanor and who has not been required to submit a DNA sample for DNA profiling may make a motion to the court for an order to require that DNA analysis be performed on evidence collected in the case for which the person stands convicted.

The court "shall grant an application for DNA profiling if *all of the following apply*":

a. *The forensic sample subject to DNA profiling is available and . . . DNA profiling has been previously performed on the forensic sample and the defendant is requesting DNA profiling using a new method or technology that is substantially more probative than the DNA profiling previously performed.*
b. A sufficient chain of custody has been established for the forensic sample.

  c. The identity of the person who committed the crime for which the defendant was convicted was a significant issue in the crime for which the defendant was convicted.

  d. The forensic sample subject to DNA profiling is material to, and not merely cumulative or impeaching of, evidence included in the trial record or admitted to at a guilty plea proceeding.

  e. The DNA profiling results would raise a reasonable probability that the defendant would not have been convicted if such results had been introduced at trial.

Iowa Code § 81.11 (emphasis added).

The facts relevant to this issue are as follows. During the criminal investigation of the victim's residence, a number of items were collected for testing, including a yellow top cover bed linen, a pink blanket, a yellow blanket, purple pants and top, a pair of boxer shorts, a white towel, and denim jeans. A sanitary napkin the victim wore after the assault was also collected, and buccal swabs were taken directly from her vaginal and anal areas. Several of these pieces of evidence contained seminal fluid (the pink blanket, sanitary napkin, and buccal swabs of the victims vaginal and anal areas), which were then sent to the Iowa Division of Criminal Investigation (DCI) for DNA testing. Meanwhile, a buccal swab from Tyson's mouth was also taken.

There is no dispute the DNA profile extracted from DCI testing of the forensic samples was linked to the DNA profile listed in the online database for Tyson as well as the buccal swab taken directly from him. At the hearing on his first PCR application, Tyson agreed the DNA found on the victim's pink blanket, anal swab, vaginal swab, and sanitary napkin produced match to him in the

combined DNA index system.[2]  He also acknowledged the police obtained a buccal swab from him during an interview after the crime that matched the DNA found on the forensic samples.[3]  Tyson also introduced the DCI report at the hearing and agreed the report "basically said the DNA was [his]."

More than four years later, at the hearing on his motion for DNA testing, Tyson specified he was requesting "retest[ing]" of the DNA found on the forensic samples tested during the initial criminal investigation.  The following colloquy took place on this issue:

> Q. [COURT]: Are you asking for a retest of the known forensic samples that [the State] just listed that we know were tested that are referred to, at least from what I've seen, in the prior post-conviction ruling?  Are you asking for those to be retested?  And/or is there separate forensic samples that you're asking for a first test on?  And, if so, what are those forensic samples?  A. [PCR COUNSEL]: I think that what we would be asking to have tested would be—I think that the State's right that the statute is seemingly limited to the testing of existing forensic samples, and there are known existing forensic samples in this case as—as the State previously referenced.  And I think that the items or materials that did not have, I guess, bodily fluid on them that were not  submitted to the lab would not be something that would necessarily fall within the gamut of the statute as far as what the Court could order to be retested.  *So with respect to what we are most interested in having retested would be the DNA found in the pink blanket, the sanitary napkin, and the anal and vaginal swabs of the victim.*
> Q: Okay.  So those are the forensic samples that you're asking the Court to order to be tested?  A: Yes.
> . . . .
> Q: Okay.  So we've got at least this one set that's been tested that we've talked about, and I understand that.  Do you know of other forensic samples . . . that were not tested that you're seeking to have tested?  A: No, your Honor.
> Q: Okay.  So we're just talking about retests?  A: Yes.

---

[2] Tyson alleged the match was "bogus."  He also pointed to some discrepancies in the spelling of his name in the DNA reports, but he did not disagree the reports referred to him.

[3] He alleged the officers "framed me on my DNA that they took from me."

(Emphasis added.)

The court then turned to Iowa Code section 81.11, which it ultimately found dispositive and fatal to Tyson's request:

> Q [COURT]: All right. So under 81.11(1)(a), in order—my reading of this is in order for me to order a retesting, you have to show that there's some new method or technology that would be substantially more probative than the testing that was done before. Unless I missed it, I have zero evidence of that. I think the statement you made was that was 2012, it's now 2020, it's got to be better. To me, that's not enough. *So do you have some expert testimony, evidence, opinion, or something that tells me that the DNA testing that could be done on these samples today is substantially more probative than the DNA testing that was done back in 2011 or 2012, whenever it was?* A [PCR COUNSEL]: *No, I do not.*
>
> Q: Okay. . . . You have conceded that you don't have evidence of a new method or technology that is substantially more probative, so I find that your application fails under [Iowa Code section] 81.11(1)(a) because I have zero evidence that retesting these samples, these forensic samples which you specifically asked to be retested, can be done with a new method or technology that is substantially more probative than the testing previously performed. Because I find that, I don't need to go into any of the other factors under subsection (1) of 81.11 because, as that Code section states, "all the following must apply." That one has not been established, so we're done. The application is denied.

(Emphasis added.)

Upon our review, we concur in the court's determination that section 81.11(1)(a) provides no relief for Tyson, given his concession that he was not "requesting [retesting] using a new method or technology that is substantially more probative than the DNA profiling previously performed." In interpreting a statute, "our primary goal is to give effect to the legislature's intent as expressed in the statute's words." *State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019). In *Davis*, our supreme court also observed,

> We seek a reasonable interpretation which will best effectuate the purpose of the statute . . . . We give words their ordinary meaning

> absent legislative definition. Interpreting a statute requires us to assess it in its entirety to ensure our interpretation is harmonious with the statute as a whole rather than assessing isolated words or phrases.

*Id.* (internal citations omitted). The ordinary meaning and only reasonable interpretation of the phrase "if all of the following apply," as used in section 81.11(1) is that each requirement in paragraphs 81.11(1)(a)–(e) must be satisfied to be entitled to DNA testing under that section. Inasmuch as Tyson concedes he could not establish the requirement in paragraph 81.11(1)(a), he is not entitled to DNA testing pursuant to that section. We next consider whether Tyson was entitled to DNA testing pursuant to section 81.10.

Upon our review, of the district court's written and oral ruling denying the motion for DNA testing, we conclude the court did not address the issue of whether Tyson was entitled to such testing pursuant to section 81.10. And Tyson did not file a motion to enlarge to obtain a ruling relative to section 81.10. *See Sandoval v. State*, 975 N.W.2d 434, 438 (Iowa 2022) (finding error not preserved where "the district court did not rule" on the claims); *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002))). Accordingly, we affirm on this issue.

Subsequently, with regard to Tyson's PCR application, the court addressed Tyson's claim of actual innocence on the basis "the DNA found in discovery was not his"[4] and concluded in relevant part:

> Under the applicable law stated above, the Court finds that for Mr. Tyson to prevail on his actual innocence claim, he must meet the procedural requirements, including the statute of limitations. Mr. Tyson attempted to do so through the filing of a motion for DNA profiling. Following a hearing on the motion, this Court denied said motion. . . . . Thus, Mr. Tyson cannot get around the statute of limitations on this attempted "ground of fact."
> . . . .
> . . . Mr. Tyson has not produced any *new* evidence that would show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence.
> . . . .
> For all the above reasons, the Court finds there is no genuine issue of material fact regarding Mr. Tyson's actual innocence claim.

We discern no error in this ruling. Tyson did not present any new evidence to support his claim of actual innocence, and the facts he relies on to support his actual-innocence claim were available to him within the section 822.3 timeframe and cannot be used to circumvent the time-bar. *See Schmidt v. State*, 909 N.W.2d 778, 797 (Iowa 2018) ("For an applicant to succeed on a freestanding actual-innocence claim, the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence."); *Quinn v. State*, 954 N.W.2d 75, 77 (Iowa Ct. App. 2020) ("We have

---

[4] Tyson also argued "he ha[d] an alibi that he was not in Iowa on the date of the offense," but he does not reraise that claim on appeal.

found *Schmidt* does not apply to overcome the statute of limitations where the evidence put forward to support a claim of actual innocence was available to the applicant or could have been discovered with due diligence within the limitations period.").

We affirm the denial of Tyson's request for DNA retesting and the dismissal of his second application for postconviction relief.

**AFFIRMED.**