# IN THE COURT OF APPEALS OF IOWA

No. 23-0964
Filed September 18, 2024

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**HOPE JENNIFER CLARK,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Des Moines County, Emily Dean,

Judge.

 A defendant appeals her conviction for operating while intoxicated.

**AFFIRMED.**

 Kent A. Simmons, Bettendorf, for appellant.

 Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney

General, for appellee.

 Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**AHLERS, Presiding Judge.**

A jury found Hope Clark guilty of operating while intoxicated (OWI). She challenges her conviction in three respects. She argues her conviction is not supported by sufficient evidence, challenges the district court's denial of her motion to suppress, and claims the court erred in admitting hearsay evidence.

## I.    Sufficiency of the Evidence

We begin with Clark's challenge to the sufficiency of the evidence supporting her conviction because success on this challenge would require us to remand for judgment of acquittal and end our inquiry. We review claims of insufficient evidence for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). "We will uphold a jury's verdict if it is supported by substantial evidence." *Id.* There is substantial evidence if it could convince a rational fact finder of the defendant's guilt beyond a reasonable doubt. *Id.* We "view the 'evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record.'" *Id.* (quoting *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005)).

The marshaling instruction required the State to establish two elements: (1) "On or about the 9th day of June, 2022, in Des Moines County, Iowa, the defendant operated a motor vehicle" and (2) "[a]t that time the defendant was under the influence of alcohol, drugs, or a combination of alcohol and drugs." Clark

contends the State failed to produce sufficient evidence supporting the second element.[1]  A definitional instruction explained:

> A person is "under the influence" when, by drinking liquor and/or beer or by using drugs or a combination of alcohol and drugs, one or more of the following is true:
>     1. Her reason or mental ability has been affected.
>     2. Her judgment is impaired.
>     3. Her emotions are visibly excited.
>     4. She has, to any extent, lost control of bodily actions or motions.

Following our review of the record, we conclude the State produced sufficient evidence to convince a rational fact finder that Clark was under the influence when she was operating her vehicle.  Two law enforcement officers occupying the same patrol vehicle testified that as they followed Clark's vehicle, they saw Clark drive her vehicle into a curb, repeatedly drive out of her lane of travel, and drive faster than the posted speed limit.  Much of this testimony was corroborated by dashcam video.

After the officers stopped Clark's vehicle and one of them approached Clark on foot, Clark began to drive off.  The officer had to slap the side of Clark's vehicle and yell at her to stop before Clark fully stopped.  Once she fully stopped, Clark admitted to drinking that night.[2]  Both officers smelled the odor of an alcoholic beverage coming from Clark.  As the second officer asked Clark to get out of the vehicle, he had to remind Clark to shift her vehicle into park.  She was unsteady as she exited the vehicle and reached out to the side of the car to maintain her

---

[1] As Clark did not challenge the jury instructions, they are the law of the case for purposes of reviewing the sufficiency of the evidence.  *See White v. State*, 5 N.W.3d 315, 325 (Iowa 2024).

[2] She later denied drinking when asked by the second officer.

balance. The officer administering field sobriety testing observed six out of six indicators of intoxication when administering the horizontal gaze nystagmus test.

Clark attempts to explain away these indicators that she was under the influence by pointing to evidence favorable to her, including highlighting that she has a significant hearing impairment that impacts her speech and ability to understand verbal instructions.[3] But her arguments asking us to resolve conflicts in the evidence in her favor and attempting to explain away unfavorable evidence are arguments for the fact finder, not an appellate court. *See State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) ("It is not the province of the court . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; [instead,] such matters are for the jury." (citation omitted)). Taking all of the evidence presented and viewing it in the light most favorable to the State, a reasonable juror could conclude that Clark was under the influence of alcohol, so her conviction for OWI is supported by sufficient evidence.

## II.     Motion to Suppress—Iowa Code Section 804.20

Next, we address Clark's argument that the district court erred in denying her motion to suppress alleging she was denied her right to consult her attorney in violation of Iowa Code section 804.20 (2022).[4] As Clark's motion to suppress is

---

[3] To the extent Clark challenges the field sobriety testing given any failure to accommodate her hearing deficit during testing, her criticisms go the weight of the evidence rather than its admissibility. *See State v. Martin Sebastian,* No. 22-1080, 2024 WL 702226, at *3 (Iowa Ct. App. Feb. 21, 2024).

[4] Clark also claims that the motion to suppress should have been granted because her federal constitutional rights were violated. But the district court's ruling on the motion to suppress only addressed the potential violation of Iowa Code

based on a claimed statutory violation, our review is for legal error. *State v. Casper*, 951 N.W.2d 435, 437 (Iowa 2020). Likewise, "[w]e review a district court's interpretation of Iowa Code section 804.20 for errors at law." *State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019) (citation omitted). "If the district court applied the law correctly and substantial evidence supports the court's findings of fact, we will affirm the district court's ruling on a motion to suppress." *Id.*

Section 804.20 provides in relevant part:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody.

Here, Clark requested to speak with an attorney during the traffic stop after officers asked if she would consent to a preliminary breath test. Clark was not entitled to make phone calls while still on the side of the road during the traffic stop. *See Davis*, 922 N.W.2d at 334–35. But she was entitled to make the call "without unnecessary delay" after being taken to a place of detention—in this case, the jail. *See id.* The question for us to resolve is whether there was unnecessary delay in giving Clark the opportunity to call her attorney once she arrived at the jail. To

---

section 804.20, so Clark's constitutional challenge is not preserved for our review. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we [will] decide them on appeal." *State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020) (quoting *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012)). "This doctrine applies with equal force to constitutional issues." *Id.*

resolve this question, we turn to the details of what took place after Clark was arrested and taken to the jail.

After Clark refused to take the preliminary breath test, the officers arrested her and took her to the jail. After being processed into the jail, Clark was brought into a room with the officers with no handcuffs or other restraints. About ten seconds after she sat down, as Clark asked if she could have an attorney, an officer set her cell phone down on the table in front of her, told her she had the right to an attorney, and explained that he was going to explain her rights about getting an attorney. Clark acknowledged the cell phone being placed in front of her and the officer's statement that he was going to explain her rights by saying thank you.

The officer then read Clark her *Miranda*[5] rights; provided her a copy of the implied consent advisory, which he placed on top of her phone; read the implied consent advisory; read Iowa Code section 804.20 to her; and reiterated that she could "make a reasonable amount of phone calls" before deciding if she wanted to consent to giving a breath sample for alcohol-concentration testing. Clark responded by saying she just wanted to speak to her attorney. The officer immediately assured her that she could call her attorney. But Clark did not reach for her phone, ask for a phone, request a phone book, provide the name of the attorney she wanted to call, request any assistance in making a call, or ask for any accommodations due to her hearing loss.

---

[5] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (requiring a defendant to be advised of the defendant's rights prior to custodial interrogation before responses to the interrogation are admissible against the defendant).

About four seconds after the officer said she could contact her attorney, Clark stated again that she wanted her attorney. Another officer stepped in and explained to her that she could make phone calls to reach her attorney before deciding if she wanted to submit to a test. Clark responded to that officer by saying that she was going to refuse testing. She then reiterated that she wanted to say no to everything. Clark again referenced wanting her attorney and also reiterated that she was "refusing everything."

According to the State, this exchange demonstrates that officers gave Clark the opportunity to contact an attorney, but she elected not to do so and instead reached her own decision to refuse testing. Clark considers this exchange to demonstrate the opposite. She contends it shows an undue delay between her first request for an attorney during the traffic stop and when she was told she could contact an attorney following the reading of her *Miranda* rights, the implied consent advisory, and section 804.20. She also argues that the exchange at the station shows she wanted to speak with an attorney, but officers prevented her from doing so by not affirmatively facilitating that communication. As a result, she contends that section 804.20 was violated and her refusal to test should have been suppressed. *See State v. Garrity*, 765 N.W.2d 592, 597 (Iowa 2009) ("We apply the exclusionary rule to violations of Iowa Code section 804.20 . . . . The exclusionary rule extends to the exclusion of breath tests, breath test refusals, and non-spontaneous statements obtained after unnecessary delay in allowing the person the statutory right to consult with an attorney or family member." (internal citation omitted)).

Again, Clark was only entitled to make calls once she arrived at the jail, so the relevant inquiry is whether the delay after arriving at the jail was unnecessary. *See Davis*, 922 N.W.2d at 332. We reject Clark's contention that there was an unnecessary delay between her arrival at the jail and when officers gave her the opportunity to make a phone call. To begin, it took a short period of time for Clark to be processed into the jail. Administrative tasks associated with jailing the detainee are expected and do not constitute unnecessary delay. *See State v. Smith*, No. 16-0749, 2017 WL 510957, at *2 (Iowa Ct. App. Feb. 8, 2017) ("As a pragmatic matter, it is unrealistic to expect law enforcement to hand an accused a phone the minute he or she steps foot into the detention center. Necessary security measures and administrative tasks first must be performed."). Once Clark was processed into the jail and brought back to the officers, she was handed her phone within ten seconds and the officer confirmed at that time that she could call an attorney. Clark gave no indication she wanted to call at that time. The officer then read Clark her *Miranda* rights, the implied consent advisory, and the text of section 804.20 verbatim. Less than five minutes passed to complete those readings, at which point Clark referenced wanting to talk to an attorney and the officer again told Clark she could call an attorney. The other officer then repeated that she could start making calls if she wanted. Clark ultimately declined to call an attorney and simply stated she was "refusing everything."

We do not consider this ten-second to five-minute delay to be unnecessary delay, given that the delay was due to the time it took to hand Clark her phone, read her *Miranda* rights, read the implied consent advisory, and read section 804.20 itself, all of which addressed details about Clark's request to call

her attorney. *See, e.g.*, *id.* at *2 (concluding an eleven-minute delay did not amount to an unnecessary delay particularly when the delay was the result of important administrative tasks that included reading the implied-consent advisory and informing the detainee of his section 804.20 rights).

Ultimately, we agree with the district court that the delay here was not unnecessary. Officers did not violate section 804.20, and the district court correctly denied the motion to suppress evidence of Clark's refusal to provide a breath sample.

## III. Hearsay

Finally, Clark argues the district court erred in admitting hearsay. Specifically, Clark complains the officers testified that they sought out a vehicle matching Clark's vehicle's description because they received information from their dispatcher that an unknown driver had called in a report about a reckless driver. Clark sought to exclude this testimony as double hearsay via a motion in limine following the State's opening statement. The district court prohibited the State from introducing evidence of the details of what the unknown caller said to the dispatcher but permitted the officers to testify about what the dispatcher told them. The district court determined that the permitted evidence was not hearsay because it was introduced to explain the officers conduct in seeking out and following the vehicle that was the subject of the report rather than for the truth of the purported reckless driving.

We review evidentiary rulings related to hearsay for errors at law. *State v. Thompson*, 982 N.W.2d 116, 121 (Iowa 2022). Hearsay is an out-of-court statement offered "into evidence to prove the truth of the matter asserted in the

statement." Iowa R. Evid. 5.801(c). The district court has no discretion to deny admission of evidence as hearsay if the statement falls within an enumerated exception and has no discretion to admit evidence over a hearsay objection in the absence of a provision allowing it. *State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020). Likewise, it is legal error for a district court to exclude evidence as hearsay if it does not meet the definition of hearsay. *Cf. Thompson*, 982 N.W.2d at 121 (recognizing a district court's hearsay ruling is subject to review for legal error); *Veverka*, 983 N.W.2d at 202 (recognizing the district court has no discretion when ruling on a hearsay issue). "Where a hearsay statement includes a further hearsay statement, both statements must conform to a hearsay exception for the statement to be admissible." *State v. Puffinbarger*, 540 N.W.2d 452, 455 (Iowa Ct. App. 1995).

We find no error in the district court's determination that the officers' testimony about the call they received from their dispatcher was not hearsay because it was offered to explain responsive conduct and not to prove the truth of the dispatcher's statement—namely, that the suspect car was being driven recklessly. *See State v. Plain*, 898 N.W.2d 801, 812 (Iowa 2017) ("An out-of-court statement offered only to explain responsive conduct that is relevant to an aspect of the State's case is not offered to prove the truth of the matter asserted and is therefore not hearsay."). Jurors may have been left to wonder why the officers turned their patrol vehicle around and quickly accelerated to catch up to Clark's vehicle if they weren't told about the dispatch call. So the court did not err in allowing the evidence for that purpose.

As to purpose, when evidence is admitted to explain responsive conduct, it must be limited in scope to achieve only that purpose. *Id.* On appeal, Clark suggests that the dispatch call evidence was used beyond the limited scope for which it was admitted. But Clark failed to preserve error on that claim, as no objection was lodged at the district court asserting that the use of the evidence exceeded the scope of the purpose for which it was offered. *See Buboltz v. Birusingh*, 962 N.W.2d 747, 758 (Iowa 2021) (holding a party fails to preserve error if it does not object to improper use of evidence admitted for a limited purpose).

Further, even if we assumed for argument's sake that the officers' testimony amounted to inadmissible hearsay or was not properly limited in scope to only explain responsive conduct, we cannot provide Clark any relief because the admission did not result in prejudice. *See Plain*, 898 N.W.2d at 813. It is the State's burden to establish that any admission was not prejudicial. *Id.* "The burden to affirmatively establish lack of prejudice is met 'if the record shows the hearsay evidence did not affect the jury's finding of guilt.'" *Id.* (citation omitted).

Here, the State met its burden of establishing a lack of prejudice. Clark's attorney effectively cross-examined the officers about the reckless-driving report, and they acknowledged that they had no evidence of reckless driving, the driving problems they observed did not constitute reckless driving, and Clark was not cited for reckless driving. This testimony—and Clark's attorney's emphasis of it during closing argument—effectively negated any harm from the suggestion of reckless driving flowing from the dispatch-report evidence. Further, Clark testified and admitted to swerving, speeding, and making an illegal lane change and that such poor driving resulted in "someone calling in a reckless driver." This admission by

Clark made the dispatcher-report evidence cumulative. *See State v. Skahill*, 966 N.W.2d 1, 16 (Iowa 2021) ("Another way the State may potentially overcome the presumption of harm [of admitting hearsay] is by showing that the wrongly admitted evidence was cumulative."). And Clark's admission, coupled with the officers' admissions that no reckless driving occurred, negated any harm from the challenged evidence by showing that "reckless driving" was a mischaracterization of how Clark was actually driving.

The clarification of the "reckless driving" report by both officers on cross-examination, Clark's admissions during her testimony, and abundant incriminating evidence supporting Clark's conviction cause us to conclude that any erroneous admission of hearsay did not result in prejudice necessitating a retrial. *C.f. State v. Krogmann*, 998 N.W.2d 141, 153–54 (Iowa 2023) (evaluating the inculpatory evidence when deciding if prejudice resulted from an evidentiary error).

## IV. Conclusion

The State introduced sufficient evidence to enable a reasonable fact finder to conclude that Clark was operating a motor vehicle while under the influence of alcohol. Also, officers did not deprive Clark of her statutory right to phone her attorney after reaching the jail, so the district court properly denied her motion seeking to suppress evidence of her refusal to submit to testing. Finally, the court did not err in allowing the State to introduce evidence of a law enforcement dispatcher's report to officers to look for a vehicle being driven recklessly. Such evidence was not hearsay because it was admitted to show responsive conduct

by the officers rather than for its truth.  And, even if the evidence was hearsay, its admission was harmless.  Accordingly, we affirm.

**AFFIRMED.**